**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 38437**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | **2013 Opinion No. 1** |
| Plaintiff-Respondent, | ) | |
| | ) | **Filed: January 4, 2013** |
| v. | ) | |
| | ) | **Stephen W. Kenyon, Clerk** |
| RANDALL STEVEN ROTHWELL, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

Judgment of conviction for lewd conduct with a minor, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Elizabeth A. Allred, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

LANSING, Judge

Randall Steven Rothwell appeals from his conviction of lewd conduct with a minor under sixteen. Rothwell asserts that the district court erred by excluding evidence of Rothwell's character and by permitting the State to admit irrelevant and prejudicial evidence. Rothwell also asserts that the prosecutor committed misconduct during closing arguments, and that his sentence was excessive. We affirm.

**I.**

**BACKGROUND**

In April 2009, eighteen-year-old Rothwell lived in his parents' home. Six-year-old A.N. and her mother lived nearby. One afternoon, A.N. went into the Rothwells' yard to play with their dog. Rothwell opened his door and let the dog and A.N. into his house. Inside, Rothwell set up a video game for A.N. to play in his bedroom. After noticing that she could no longer see A.N. in Rothwell's yard, A.N.'s mother began to look and call for her. In response, A.N. and

Rothwell emerged from his house, and Rothwell informed A.N.'s mother that A.N. had been inside playing video games. According to A.N.'s mother, A.N. then said, "Mommy, Randy had me lick his penis." Rothwell testified, however, that A.N. had said "I'm playing Randy's joystick game and eating all the little ghosts." Rothwell then commented on A.N.'s active imagination, and A.N. and Rothwell reentered his house. A.N.'s mother went home and checked on a pot of boiling water. Several minutes later, she returned to Rothwell's residence, and took A.N. home. A.N.'s mother called the police and was directed to take A.N. to the hospital where a nurse took swab samples from A.N.'s face, mouth, and hands.

The swab samples were sent to two forensic laboratories for testing. The first lab identified sperm cells on a swab sample taken from A.N.'s cheek, but could not generate a DNA profile from the sperm cells. The lab was, however, able to conduct a DNA analysis of other cells taken from the sample, and to exclude Rothwell as a contributor. The second lab could not verify the presence of sperm or semen on any of the samples, but was able to generate two partial male DNA profiles from other cells on the samples. One of those partial profiles, which is common to one in every 126 Caucasian males, was consistent with Rothwell's DNA profile.

Rothwell was charged with lewd conduct with a minor under sixteen, Idaho Code § 18-1508, and was found guilty by a jury. The district court imposed a sentence consisting of a unified term of incarceration of twenty-five years, including a six-year fixed term, and retained jurisdiction for up to 365 days. The court ultimately relinquished jurisdiction and ordered the execution of the original sentence.

On appeal, Rothwell asserts that the district court erred by excluding the testimony of two character witnesses proffered by the defense and by admitting irrelevant evidence suggesting that he had harassed A.N. and her mother. He further contends that several comments made during the State's closing argument constituted prosecutorial misconduct and that his sentence was excessive.

## II.

## ANALYSIS

### A. Character Evidence

At trial, defense counsel informed the court that he intended to call two of Rothwell's friends to testify that in their opinions, based on their observations of his interactions with children, Rothwell was trustworthy with preteen children. The State objected. The district court

2

determined that the proposed testimony was inadmissible because Rothwell's trustworthiness with children was not an element of the charged offense or an element of a defense to that crime, and was therefore irrelevant. The court also concluded that any probative value from the testimony would be outweighed by unfair prejudice and the likelihood that the evidence would confuse and mislead the jury. The court reasoned that even if the evidence possessed probative value, that value was limited because the witnesses could not have observed Rothwell alone with children, and that the introduction of the testimony would lead to "mini trials" to explore specific instances of conduct that would confuse and distract the jury.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." I.R.E. 401. Relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." I.R.E. 403. Whether evidence is relevant under Rule 401 is an issue of law that we review de novo, while the decision to exclude relevant evidence under Rule 403 is reviewed for an abuse of discretion. *State v. Shutz*, 143 Idaho 200, 202, 141 P.3d 1069, 1071 (2006); *State v. Sanchez*, 147 Idaho 521, 525, 211 P.3d 130, 134 (Ct. App. 2009); *State v. Clark*, 115 Idaho 1056, 1059, 772 P.2d 263, 266 (Ct. App. 1989).

Evidence of a person's trait of character is generally not admissible for the purpose of proving that the person acted in conformity with that trait on a particular occasion. I.R.E. 404(a). As an exception to this rule, however, criminal defendants are allowed to present evidence of a "pertinent trait" of character in defense of a charge. I.R.E. 404(a)(1); *State v. Bailey*, 117 Idaho 941, 942, 792 P.2d 966, 967 (Ct. App. 1990). In this context, the word "pertinent" is generally synonymous with "relevant." Thus, a pertinent character trait is one that is relevant to the crime charged by making any material fact more or less probable. *See State v. Hernandez*, 133 Idaho 576, 583, 990 P.2d 742, 749 (Ct. App. 1999); *accord State v. Martinez*, 195 P.3d 1232, 1240 (N.M. 2008); 22A Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure: Evidence § 5236, p. 209 (2012). It follows that the district court was incorrect in

holding that a trait of character is pertinent and admissible under I.R.E. 404(a)(1) only if that trait is an element of the offense or of a defense to the charge.[1]

Whether a defendant's morality with respect to minors is a pertinent character trait in cases involving sexual misconduct with a minor is an issue of first impression in Idaho,[2] but most other courts addressing the issue have concluded that traits relating to a defendant's sexual morality with children are pertinent in such cases. *State v. Rhodes*, 200 P.3d 973, 976 (Ariz. Ct. App. 2008) ("sexual normalcy, or appropriateness in interacting with children"); *People v. McAlpin*, 812 P.2d 563, 572-76 (Cal. 1991) (opinion that the defendant was not "given to lewd conduct with children" and was normal in his sexual tastes); *State v. Hughes*, 841 So. 2d 718, 723 (La. 2003) (reputation "as a moral person and for safe and proper treatment of young children"); *Wheeler v. State*, 67 S.W.3d 879, 882 (Tex. Crim. App. 2002) ("moral and safe relations with small children or young girls"); *State v. Griswold*, 991 P.2d 657, 663 (Wash. Ct. App. 2000) ("sexual morality") *abrogated on other grounds by State v. Devincentis*, 74 P.3d 119 (Wash. 2003). *See also State v. Anderson*, 686 P.2d 193, 204 (Mont. 1984) (orthodox sexual mores); *State v. Workman*, 471 N.E.2d 853, 861 (Ohio Ct. App. 1984) (trusted with children); *State v. Enakiev*, 29 P.3d 1160, 1164-65 (Or. Ct. App. 2001) (sexual propriety); *State v. Benoit*, 697 A.2d 329, 331 (R.I. 1997) (trustworthiness with children); *State v. Miller*, 709 P.2d 350, 353-54 (Utah 1985) (sexual morality). A minority of courts take the opposite view. *See Hendricks v. State*, 34 So. 3d 819, 825 (Fla. Dist. Ct. App. 2010) *rev. granted*, 49 So. 3d 746 (Fla. 2010); *State v. Graf*, 726 A.2d 1270, 1274-75 (N.H. 1999).

---

[1] A character trait is an element of a charge, claim, or defense if "proof or failure of proof, of the character trait by itself actually satisf[ies] an element of the charge, claim, or defense." *State v. Custodio*, 136 Idaho 197, 204, 30 P.3d 975, 982 (Ct. App. 2001) (quoting *United States v. Keiser*, 57 F.3d 847, 856 (9th Cir. 1995)). Rothwell's sexual morality with children was not an element of the crime or defense. *See State v. Rhodes*, 200 P.3d 973, 977 (Ariz. Ct. App. 2008). *Cf. Custodio*, 136 Idaho at 204, 30 P.3d at 982 ("Proof of a victim's propensity for violence, standing alone, does not prove an element of a claim of self-defense.").

[2] In at least two prior sex offense cases, *State v. Ormesher*, ___ Idaho ___, ___ P.3d ___ (Ct. App. Dec. 7, 2012), and *State v. Harvey*, 142 Idaho 527, 532, 129 P.3d 1276, 1281 (Ct. App. 2006), we addressed the permissible scope of cross-examination of a character witness who has given an opinion that the defendant was moral or trustworthy with children, but the admissibility of the opinion testimony itself was not at issue in those cases.

We conclude the majority rule is correct. Because character traits relating to a defendant's sexual morality with children are pertinent, or relevant, in this type of case, such evidence is admissible under I.R.E. 404(a)(1). We recognize that sexual abuse is usually secret behavior that would not be observed by others, and therefore the opinion or reputation evidence about a defendant's trustworthiness with children may be of marginal persuasiveness. The same can be said, however, of many types of criminal activity. It appears that Rule 404(a)(1) was nevertheless intended to allow an accused the opportunity to present evidence of good character that is pertinent to the nature of the charged offense. The unlikelihood that the character witnesses would have been in a position to witness criminal conduct of the defendant goes to the weight of character evidence, not its admissibility.

Rothwell's counsel told the court that he intended to elicit the testimony in the form of opinion or reputation evidence, which is the correct method to introduce character evidence. Idaho Rule of Evidence 405(a) specifies that in every case where a person's character or character trait is admissible, that character or trait may be proved "by testimony as to reputation or by testimony in the form of an opinion."

The district court nevertheless excluded Rothwell's character evidence partly because it was concerned that the witnesses might describe specific instances of conduct, which would not be admissible, while defense counsel was laying the foundation for their opinion testimony. We conclude that this was error because the total exclusion of Rothwell's character witnesses was not necessary to prevent the disclosure to the jury of foundational specific acts evidence. The district court could have limited the scope of the witnesses' testimony in such a manner as to allow defense counsel to lay a foundation for their opinions without eliciting any testimony regarding specific instances of conduct. For example, the court could have allowed the witnesses to explain how long they had known Rothwell, and the extent to which they had seen him interact with children during that time. *See McAlpin*, 812 P.2d 563, 575-76 (A defendant may introduce evidence "to prove the relevant character trait not by specific acts of 'nonmolestation,' but by the witnesses' opinion of that trait based on their long-term observation of defendant's course of consistently normal behavior with their children."). Alternatively, if evidence of a specific instance of conduct was necessary to lay a foundation for the witnesses' opinions, the district court could have allowed Rothwell to lay that portion of the foundation outside the presence of the jury. *See* I.R.E. 104(a), (c).

5

The district court also stated a concern that even if defense counsel did not elicit specific instances of conduct, the prosecutor could do so on cross-examination, "and then we're off doing specifically what the Rules of Evidence tell us that we shouldn't be doing, and that is talking about reputation for a certain pertinent character trait through specific instances of conduct." The district court was incorrect in its belief that the evidence rules preclude cross-examination using specific instances of behavior. Rather, after the admission of character evidence through opinion or reputation testimony, Rule 405(a) specifically authorizes inquiry into "relevant specific instances of conduct" on cross-examination. For example, in *Ormesher*, ___ Idaho at ___, ___ P.3d at ___, and *Harvey*, 145 Idaho at 532, 129 P.3d at 1281, we held that the trial court properly allowed cross-examination of character witnesses by queries about the defendant's prior convictions for crimes that were relevant to the trait of character that the witness had attributed to the defendant. Because Rule 405(a) permits the very procedure that the district court anticipated, the prospect of such cross-examination into specific instances of conduct did not justify exclusion of Rothwell's proffered character evidence.

The district court also held that the evidence was inadmissible because the probative value of the evidence was outweighed by unfair prejudice and the likelihood that the jury would be distracted and confused by collateral issues of specific instances of prior conduct. As just noted, however, the district court erred in its analysis regarding the relevance of the evidence and in its analysis regarding the danger of unfair prejudice, confusion, or delay. Because the district court did not correctly assess either prong of the Rule 403 balancing test, the exclusion of the evidence on Rule 403 grounds was an abuse of discretion.

### B. Evidence of Harassment

Over defense objection, in cross-examining Rothwell's mother the State elicited testimony about a plastic lawn chair owned by the Rothwell family. The chair bore a picture of a smiley face with its tongue sticking out. According to the testimony, after A.N.'s accusation was reported to police, this chair, along with several other lawn chairs, was placed near the fence between the Rothwells' yard and A.N.'s home. The smiley face chair was positioned such that the face looked toward A.N.'s house. Rothwell's mother testified that she had owned the chair for eleven years, that it was regularly placed against the fence along with other lawn chairs while the lawn was mowed, and that she could not identify who put the chair against the fence without

6

knowing when the photograph was taken or who mowed the lawn on that date. The testimony continued:

> Q. Don't you think when your son is charged with what he did, that insignia or design would be something that could send a message to [A.N. and her mother] of what he did?
>
> A. I suppose it could, but it certainly wasn't intended to.
>
> . . . .
>
> Q. Why could that send a message?
>
> A. Well, because of the tongue sticking out, I suppose.
>
> . . . .
>
> Q. And you're telling us that chair wasn't positioned in that photograph to send a message to the mother and daughter?
>
> A. That's exactly what I'm telling you.
>
> . . . .
>
> Q. There would be no reason to position that chair like that unless you were gonna [sic] send a message to the next-door neighbors, would there?
>
> A. We would not--we did not intentionally place the chair there.
>
> Q. Alright.
>
> A. We were just doing our work.

Following this testimony, a photograph of the chair was admitted into evidence over Rothwell's objection. Rothwell asserts that both the testimony and the photograph were irrelevant and should have been excluded.

The State contends that Rothwell did not object to the testimony on relevance grounds and therefore the issue is not preserved for appeal. We disagree. During the State's cross-examination, Rothwell objected to the questions concerning the chair on grounds of a lack of foundation for the testimony, and then added that the evidence "doesn't really add much relevance." Rothwell again objected on relevance grounds when the State moved for the admission of the photograph of the chair. Rothwell's objections were sufficient to preserve the issue of relevance for appellate review.

The State posits that evidence of harassment, via the placement of the chair, was relevant to show that Rothwell and his parents believed Rothwell was guilty. This argument is not well taken. We cannot perceive how the positioning of the chair, even assuming it was intentionally placed to "send a message," indicated either consciousness of guilt on Rothwell's part or his parents' belief in his guilt. Although evidence of harassment could tend to show hostility, evidence that a defendant and his parents are angry or hostile toward the person who has accused him of a crime does not demonstrate a guilty conscience. Such emotions would be as likely or

7

even more likely in cases where the accusation is a false one. We find in this evidence no probative value to show consciousness of guilt by Rothwell or his parents.

The State also argues that the evidence was relevant to attack Rothwell's credibility by rebutting his claim that he was unaware of the allegations being made against him until he was arrested approximately three months later. We disagree. First, there is no evidence that Rothwell is the person who positioned the chair. Second, even assuming that the evidence could support an inference that Rothwell knew of the allegations at some point before his arrest, it was not relevant as rebuttal because the State presented the evidence before Rothwell testified. The State has not directed us to any rule that would permit the State to attack the defendant's credibility before he has testified. Because the testimony and the photograph of the chair were not relevant, their admission was erroneous.

## C. Prosecutorial Misconduct

Rothwell next asserts that the prosecutor engaged in misconduct during closing argument by making statements that appealed to the jury's passions and prejudice, by mischaracterizing the evidence, and by arguing as substantive evidence matters that were admitted only for a limited purpose.

Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id.*; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). "The line separating acceptable from improper advocacy is not easily drawn; there is often a gray zone." *State v. Carson*, 151 Idaho 713, 721, 264 P.3d 54, 62 (2011) (quoting *United States v. Young*, 470 U.S. 1, 7 (1985)). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003). "Considerable latitude, however, has its limits, both in matters expressly stated and those implied." *Phillips*, 144 Idaho at 86, 156 P.3d at 587. A prosecutor exceeds the scope of this latitude if he or she "attempts to secure a verdict on any factor other than the law as set forth in the jury instructions and the evidence admitted during trial, including reasonable inferences that may be drawn from that evidence." *State v. Perry*, 150 Idaho 209, 227, 245 P.3d 961, 979 (2010).

### 1. Appeal to passion or prejudice

During closing argument the prosecutor noted that juries sometimes acquit defendants even when a charge has been proven beyond a reasonable doubt. The prosecutor asked the jurors not to do so in this case because they had taken an oath to follow the law, because the jury should not consider punishment during its deliberations, and "because of the crime itself." The prosecutor continued, "This isn't some--" at which point defense counsel objected on the grounds that the prosecutor was attempting to appeal to the jury's passion or prejudice. The court overruled the objection, but cautioned against improper argument. The prosecutor then stated, "You know what happened in this case. He doesn't deserve to be set free."

Rothwell asserts that these statements impermissibly sought to secure a verdict through an appeal to the emotion, passion, or prejudice of the jury. *See State v. Ellington*, 151 Idaho 53, 62, 253 P.3d 727, 736 (2011); *Phillips*, 144 Idaho at 87, 156 P.3d at 588. We find this argument to be without merit. The prosecutor was not attempting to persuade the jury to convict Rothwell for an improper reason, but was asking the jury not to acquit Rothwell for an improper reason. The prosecutor asked the jury not to consider Rothwell's young age or the punishment he might receive, and instead, to follow the law and to consider only the crime itself when deciding upon a verdict. Even if the prosecutor was about to make other improper statements that would have appealed to the jury's passion or prejudice, Rothwell's objection effectively stopped him from doing so.

### 2. Mischaracterization of evidence

Rothwell contends that two portions of the prosecutor's closing argument mischaracterized trial evidence. It is improper to misrepresent or mischaracterize the evidence in closing argument. *Phillips*, 144 Idaho at 86, 156 P.3d at 587. Because Rothwell did not object to the statements that are now challenged on appeal, we review for fundamental error. A defendant asserting fundamental error bears the burden to persuade the appellate court that the alleged error: (1) violated one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Perry*, 150 Idaho at 226, 245 P.3d at 978; *State v. Thumm*, 153 Idaho 533, 542, 285 P.3d 348, 357 (Ct. App. 2012). Rothwell contends the alleged misconduct deprived him of due process and thereby violated his constitutional rights.

9

During cross-examination of the State's expert witnesses, defense counsel elicited testimony that it was possible for sperm cells to have been indirectly transferred to A.N.'s cheek if A.N. touched some item containing sperm cells and then touched her face. Rothwell testified that he had masturbated in his room in the days preceding the date of the alleged abuse, and on cross-examination testified that in the process he used napkins which were discarded in his wastebasket. Rothwell also testified that he left A.N. unattended in his room for fifteen to twenty minutes and that he didn't know why A.N. had sperm on her cheek or how it got there. During closing argument, the prosecutor attempted to illustrate the implausibility of Rothwell's defense by arguing that it was unlikely that A.N. would have touched napkins in Rothwell's garbage that may have had his semen on them. Rothwell asserts that the prosecutor mischaracterized the evidence by portraying the possibility that A.N. came into contact with sperm by touching napkins in the wastebasket as the only possible method of indirect transfer, when in fact numerous other theories were discussed at trial. We find no misconduct. Although the prosecutor focused on, and attacked the plausibility of, only one of the numerous possible ways in which sperm could have been indirectly transferred to A.N.'s cheek, the argument was a fair comment on evidence presented at trial. Because the argument did not mischaracterize the evidence, it did not constitute prosecutorial misconduct and therefore did not deprive Rothwell of any constitutional right.

The prosecutor also noted a seeming contradiction between Rothwell's testimony that he did not trust A.N. to be alone with his dog in his yard and his testimony that he left A.N. unattended in his room with all his belongings, including fully assembled firearms. Rothwell argues that the prosecutor mischaracterized the evidence by saying that the firearms in Rothwell's room were fully assembled. We agree that the prosecutor's statement was a slight mischaracterization of the evidence, for Rothwell testified that he was "fairly sure" that the guns were not fully assembled. We conclude, however, that this slight mischaracterization was not so severe as to deprive Rothwell of due process. He has not shown a clear violation of his constitutional rights and thus has not demonstrated fundamental error. Consequently, this claimed error is not subject to further review.

### 3. Use of evidence admitted for limited purpose

Rothwell next contends that the prosecutor's closing argument treated as substantive evidence matters that were admitted for limited evidentiary purposes. The prosecutor argued that

10

A.N.'s allegation of abuse was "backed up or corroborated" by the testimony of the nurse who examined her, a detective who interviewed her, and her mother. Rothwell complains that the prosecutor's argument constitutes misconduct because the testimony of those witnesses was admitted for limited purposes. Because Rothwell did not object to this portion of the closing argument, we review under our standards for fundamental error.

It is impermissible for a party to ask the jury to rely on evidence admitted for a limited purpose as though it had been admitted for all substantive purposes, *State v. Hairston*, 133 Idaho 496, 507, 988 P.2d 1170, 1181 (1999); *Phillips*, 144 Idaho at 86, 156 P.3d at 587; but Rothwell has not demonstrated that such an impropriety occurred here.

The nurse who took swab samples from A.N.'s face, mouth, and hands testified that A.N. said she had been asked to lick someone's penis. Rothwell objected on hearsay grounds, but the court overruled the objection under Idaho Rule of Evidence 803(4), which exempts from the general rule of hearsay exclusion statements made for purposes of medical diagnosis or treatment. Thus, the nurse's statements were not admitted for a limited purpose.

The detective testified, without objection, that he interviewed A.N. shortly after the alleged abuse and that some of her trial testimony was inconsistent with statements she made at the interview. For example, he said that, during the interview, A.N. said that Rothwell's penis was green, and that she had removed her clothing while she was in Rothwell's room, but she denied making those statements at trial. During cross-examination of the detective, Rothwell elicited testimony about numerous other statements made by A.N. during the interview, including many that were bizarre. On redirect examination the State asked the detective whether he found anything about A.N.'s testimony to be consistent. Defense counsel objected that the question was argumentative and cumulative, but the court overruled the objection.[3] The detective answered that A.N.'s statements regarding licking and rubbing Rothwell's penis were

---

[3]     Rothwell has not challenged this ruling on appeal, but now asserts that the detective's answer was admitted under Idaho Rule of Evidence 801(d)(1)(B), and that under that rule, the statement was admitted only to rebut an express or implied charge that A.N.'s trial testimony was a recent fabrication. However, defense counsel did not make a hearsay objection to the testimony at trial, and thus the admission of the testimony was not admitted for a limited purpose under the hearsay rules.

consistent. Having reviewed the detective's testimony, and the single objection made during the testimony, we conclude that none of the testimony was admitted for a limited purpose.

A.N.'s mother testified that after A.N. and Rothwell emerged from his house, A.N. said, "Randy had me lick his penis." After Rothwell objected on hearsay grounds, the State argued that the statement was admissible to lay the foundation for the admission of Rothwell's response: "Boy, what imagination she has." The district court overruled the objection and permitted A.N.'s mother to testify to A.N.'s out-of-court statement.[4] Rothwell did not request a limiting instruction and has not asserted a claim of instructional error. Absent a limiting instruction, the mother's statement could be considered by the jury for all purposes.

Because none of the identified testimony was admitted for a limited purpose, Rothwell has not shown misconduct in the prosecutor's reliance on the evidence in closing argument and has not demonstrated fundamental error.

### D.    Cumulative Error Analysis

We have concluded that the district court erred here by excluding Rothwell's evidence of his trustworthiness with children and by admitting irrelevant evidence suggesting that he or his parents harassed A.N. and her mother through the placement of a lawn chair bearing a smiley face. Trial error will be deemed harmless if the reviewing court is convinced beyond a reasonable doubt that the error did not contribute to the verdict, *Perry*, 150 Idaho at 227, 245 P.3d at 979, but a series of errors that are harmless in and of themselves may in the aggregate show the absence of a fair trial. *Id.* at 230, 245 P.3d at 982.

In reviewing for harmless error, the court evaluates the potential prejudice from the inadmissible evidence in the context of the evidence presented at trial. *State v. Yager*, 139 Idaho 680, 687, 85 P.3d 656, 663 (2004) (error in failing to suppress evidence was harmless because probative value of evidence improperly admitted at trial was de minimis in light of other evidence properly presented to establish defendant's guilt). The State's evidence consisted primarily of A.N.'s testimony, her statements to others regarding the alleged abuse, evidence that sperm was located on A.N.'s cheek, and evidence of a partial DNA profile from non-sperm cells that was consistent with the DNA of Rothwell and of one in every 126 Caucasian males. Defense counsel argued to the jury reasons to doubt the accuracy of the testimony of A.N. and

---

[4]    Rothwell has not challenged the district court's admission of the testimony.

her mother. He argued that A.N.'s mother did not hear A.N. say, "Randy had me lick his penis" or that she misheard what Rothwell said, and that she may have unintentionally planted the idea of abuse by questioning A.N. about it. Defense counsel pointed out that after A.N. allegedly said that she had licked Rothwell penis, her mother permitted A.N. to reenter Rothwell's house with him while she, the mother, went home to check on some boiling water. Only several minutes later did A.N.'s mother retrieve A.N. from Rothwell's home. Defense counsel argued that such behavior was inconsistent with having just received a report of sexual molestation. When A.N. returned home, her mother questioned her for fifteen to twenty minutes, at one point asking her if "fluid came out of Randy." Defense counsel argued that the allegations of abuse could have been planted by the detailed questioning, which occurred at a time when A.N. was, according to her testimony, worried that she was in trouble for going into Rothwell's house.

Defense counsel also highlighted several bizarre or inconsistent statements made by A.N. During two interviews with a police detective, A.N. appeared to confuse multiple events, including going to Rothwell's house, going to the hospital that night, and receiving a popsicle. A.N.'s mother testified that when she took A.N. to the hospital for an examination, the experience was traumatic for A.N. due in part to a prolonged and difficult process of drawing A.N.'s blood. When A.N. left the hospital late that night, the nurse gave her a green popsicle. During an interview with the detective the following morning, A.N. said that she licked and rubbed Rothwell's penis, that his penis was green, that it was as cold as ice, and that it got "super cold" by rubbing it. A.N. said that Rothwell unzipped his pants and that something "tasted like cream sugar." A.N. told the detective, "There was blood on my hands and it was sticky," and that Randy wiped it on her dress. When asked where the "blood" came from, A.N. said "Randy's penis." The detective testified that it was difficult to keep A.N. focused, and that she changed the subject throughout the interview. A.N. also made inconsistent statements about whether she was clothed or naked during the experience, and made statements that she cleaned Rothwell's room and played a secret game with him involving him touching her hip.

The State presented evidence that A.N. had sperm cells on her cheek, but the lab could not draw DNA from these cells, and the State's experts acknowledged that these cells could have arrived on A.N.'s face by indirect transfer if she touched something on which sperm cells were present. A.N. apparently told her mother and the detective that she thought Rothwell ejaculated on her hands and dress but preliminary chemical tests for semen conducted on A.N.'s clothing

13

and swab samples from her face, mouth, and hands were negative. The lab also conducted DNA analysis of a mixture of non-sperm cells found on the swab sample from A.N.'s cheek, concluded that the mixture consisted of DNA from more than one individual, and excluded Rothwell as a contributor to the mixture. The swab samples were then sent to a second lab, which could not confirm the presence of sperm or semen on any of the samples. After combining portions of all the swab samples together, the second lab was able to identify partial DNA profiles from the non-sperm cells of at least two males. One of those partial DNA profiles was consistent with the profiles of Rothwell and the profiles of one in every 126 Caucasians males.

In sum, some of the State's forensic evidence indicated that A.N. came into contact with a trace amount of semen, but the State was unable to positively identify the source. The first lab excluded Rothwell as a contributor to the mixture of DNA found on A.N.'s cheek. A second lab obtained partial DNA profiles from the non-sperm cells of at least two male individuals, but because the second lab combined the samples from A.N.'s hands, mouth, and face, it is impossible to determine which sample the cells were collected on. Even if the samples had conclusively matched Rothwell's DNA, the evidence indicated that traces of his tissue could have been transferred to A.N.'s hands while she was in his house and playing his video games.

Rothwell denied the allegations of abuse. He testified that he had previously masturbated in his room, and that it is possible that A.N. touched some item in his room that could have contained his semen. The State's experts testified that an indirect transfer of sperm to A.N.'s face was plausible.

Although the State's case was not without points of vulnerability, Rothwell's credibility was also heavily called into question by the trial evidence. He disputed the testimony of A.N.'s mother that when A.N. emerged from the Rothwell house she said that Rothwell had her lick his penis (and contends that she talked about playing his video games), but he acknowledges that in response to A.N.'s statement, he commented about her imagination. Such a comment from Rothwell would be a far more logical response to A.N.'s statement as depicted by her mother than the one depicted by Rothwell. Rothwell also testified that he did not know of the allegation that he had molested A.N. until he was arrested, approximately three months after the incident, but this testimony appears inconsistent with Rothwell's conduct. The investigating detective testified that on the day after the incident, and after interviewing A.N. and her mother, he spoke

by telephone on separate occasions with Rothwell and with Rothwell's father. The detective and Rothwell both testified that in their conversation the detective did not tell Rothwell the nature of the allegations.[5] Later that day, however, Rothwell and his father went to A.N.'s house, where Rothwell's father pounded and kicked the door and cursed A.N.'s mother.[6] Rothwell admits that he then said to A.N.'s mother, "I would never hurt [A.N.]." He provided no plausible explanation for why he would have made such a statement if he did not know he had been accused of molesting A.N.

Against this state of the evidence, we must consider the comparative significance of evidence that was erroneously excluded and erroneously admitted at Rothwell's trial. As to the excluded opinions of Rothwell's friends that he was trustworthy with children, we can confidently say that although such evidence should have been admitted, its probative value was marginal for reasons already mentioned--child molesters are unlikely to engage in activity around other adults that would disclose that proclivity. The erroneous admission of the evidence about the smiley face chair, which portrayed Rothwell's family as vindictive and hostile, would be more troublesome but for the other undisputed evidence of the same attitude that was heard by the jury. That is, the jury heard that Rothwell's father angrily went to A.N.'s home, pounded and kicked the door, and cursed A.N.'s mother when she came to the door. Rothwell's own testimony confirmed that his father was angry during this incident. In our view, in light of this uncontested evidence of the Rothwell family's hostility, the inadmissible evidence concerning the placement of the smiley face chair in their yard was inconsequential.

Having considered the entirety of the trial evidence, we conclude beyond a reasonable doubt that the evidentiary errors by the district court were of so little significance that they did not contribute to the verdict. Therefore, the judgment of conviction must be affirmed.

E.    **Sentence Review**

Rothwell asserts that his sentence of twenty-five years with six years determinate is excessive and that the district court should have reduced the sentence sua sponte following his period of retained jurisdiction. An appellate review of a sentence is based on an abuse of

---

[5]    The testimony does not further disclose the content of that conversation.

[6]    Rothwell testified that his father angrily went to the house and that Rothwell went after him only in order to try to get his father to drop the matter and return home.

15

discretion standard. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007); *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where, as here, a sentence is not illegal, the appellant has the burden to show that it is unreasonable, and thus a clear abuse of discretion. *State v. Stevens*, 146 Idaho 139, 148, 191 P.3d 217, 226 (2008); *State v. Brown*, 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Dalrymple*, 144 Idaho 628, 636, 167 P.3d 765, 773 (2007); *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends that the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982).

The primary purpose of retained jurisdiction is to enable the trial court to obtain additional information regarding the defendant's rehabilitative potential and suitability for probation. *State v. Petersen*, 149 Idaho 808, 812, 241 P.3d 981, 985 (Ct. App. 2010); *State v. Lee*, 117 Idaho 203, 205, 786 P.2d 594, 596 (Ct. App. 1990); *Toohill*, 103 Idaho at 567, 650 P.2d at 709. The decision whether to place a defendant on probation at the end of a period of retained jurisdiction or, instead, to relinquish jurisdiction over the defendant and order execution of the remainder of the sentence is a matter within the sound discretion of the district court and will not be overturned on appeal absent an abuse of that discretion. *State v. Hood*, 102 Idaho 711, 712, 639 P.2d 9, 10 (1981); *Lee*, 117 Idaho at 205-06, 786 P.2d at 596-97.

Rothwell asserts that the district court abused its discretion by failing to adequately consider various factors including his desire to participate in treatment, his acceptance of responsibility and remorse, his support from friends and family, his rehabilitative efforts during the period of retained jurisdiction, and the recommendation of probation from the Department of Correction. Having reviewed the record, we are satisfied that the district court adequately considered the mitigating evidence that Rothwell presented. Against this evidence, the district court considered the severity of Rothwell's offense and evidence suggesting Rothwell was not a

16

suitable candidate for probation. Rothwell had previously been on probation, as a juvenile, for battery, possession of drug paraphernalia, and resisting or obstructing an officer. A statement that A.N.'s mother submitted for the court's consideration at sentencing described the negative psychological impact on A.N. caused by Rothwell's crime. The district court found that Rothwell did not demonstrate any remorse for his crime until the jurisdictional review hearing, and in sum, found the slight indication of rehabilitative potential to be too little, too late. According to the information presented in two addenda to the presentence investigation report, Rothwell did not take his incarceration seriously during the period of retained jurisdiction. He received numerous disciplinary warnings for horseplay and other rule violations, including one warning made after Rothwell stated that he would kill the warden if Rothwell's mother was not allowed to visit him. In addition, two sex offender risk assessments prepared during the period of retained jurisdiction indicated that Rothwell presented a moderate to high risk to reoffend. Having reviewed the record, we cannot say that the district court imposed an excessive sentence or abused its discretion when it declined to place Rothwell on probation.

### III.

### CONCLUSION

The district court erred by excluding Rothwell's character evidence, and by admitting irrelevant evidence suggesting that Rothwell and his family harassed A.N. and her mother. However, these errors were harmless. After reviewing the record, we conclude that Rothwell's sentence is reasonable, and that the district court did not abuse its discretion by declining to place Rothwell on probation. Therefore, Rothwell's conviction for lewd conduct with a minor under sixteen, and his unified sentence of twenty-five years with a six-year determinate term are affirmed.

Judge GRATTON and Judge MELANSON **CONCUR.**