IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 39853

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2013 Unpublished Opinion No. 738 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: November 7, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| EVIN CHRISTOPHER DEVAN, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Molly J. Huskey, District Judge.

Judgment of conviction for conspiracy to commit burglary, burglary, and trespassing, affirmed.

Sara B. Thomas, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Daphne J. Huang, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Evin Christopher Devan appeals from his judgment of conviction entered upon a jury verdict finding him guilty of conspiracy to commit burglary, Idaho Code §§ 18-1401, 18-1701; burglary, I.C. § 18-1401; and misdemeanor trespassing, I.C. § 18-7011. We affirm.

I.

FACTUAL AND PROCEDURAL BACKGROUND

According to the State's evidence, Devan and six other perpetrators formed a plan to burglarize a property in a remote location. The group gathered into two vehicles, one which was driven by Devan, and drove to the property. After arriving, Devan and four perpetrators entered a green shop and started to collect items for removal. The owner of the property, donned in camouflage apparel and equipped with night vision goggles, watched the perpetrators from nearby brush. Eventually the owner called 911 and provided dispatch with a description of the vehicles and the license plate numbers. Two perpetrators who remained in the vehicles notified

1

the others that they were being watched and the perpetrators returned to the vehicles and fled the scene. Thereafter, the vehicle driven by Devan was discovered at a motel and Devan was subsequently arrested.

Following trial, a jury convicted Devan of felony conspiracy, felony burglary, and misdemeanor trespassing. Devan filed a motion for a mistrial or, in the alternative, a new trial, which the district court denied. The district court imposed concurrent unified terms of five years with two years determinate for Devan's convictions of conspiracy and burglary. The district court suspended these sentences and placed Devan on probation for a term of five years. Additionally, the district court imposed a term of six months for the trespass conviction. Devan timely appeals.

## II.

## ANALYSIS

Devan claims the prosecutor committed misconduct during closing argument that violated his right to a fair trial. While our system of criminal justice is adversarial in nature, and the prosecutor is expected to be diligent and leave no stone unturned, he or she is nevertheless expected and required to be fair. *State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007). However, in reviewing allegations of prosecutorial misconduct we must keep in mind the realities of trial. *Id.* A fair trial is not necessarily a perfect trial. *Id.*

Devan made no contemporaneous objection to the prosecutor's statements at trial. In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court clarified the fundamental error doctrine as it applies to allegations of prosecutorial misconduct. If the alleged misconduct was not followed by a contemporaneous objection, an appellate court should reverse when a defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id*. at 226 245 P.3d at 978.

Closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case. *State v. Phillips*, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct. App. 2007). Its purpose is to enlighten the jury and to help the jurors remember and interpret the evidence. *Id*.; *State v. Reynolds*, 120 Idaho 445, 450, 816 P.2d 1002, 1007 (Ct. App. 1991). Both sides have traditionally been afforded considerable latitude in closing argument to the jury and are

entitled to discuss fully, from their respective standpoints, the evidence and the inferences to be drawn therefrom. *State v. Sheahan*, 139 Idaho 267, 280, 77 P.3d 956, 969 (2003); *Phillips*, 144 Idaho at 86, 156 P.3d at 587.

Appeals to emotion, passion, or prejudice of the jury through the use of inflammatory tactics are impermissible. *Phillips*, 144 Idaho at 87, 156 P.3d at 588. *See also State v. Raudebaugh*, 124 Idaho 758, 769, 864 P.2d 596, 607 (1993); *State v. Pecor*, 132 Idaho 359, 367, 972 P.2d 737, 745 (Ct. App. 1998). The prosecutor's closing argument should not include disparaging comments about opposing counsel. *Phillips*, 144 Idaho at 86, 156 P.3d at 587. *See also Sheahan*, 139 Idaho at 280, 77 P.3d at 969; *State v. Brown*, 131 Idaho 61, 69, 951 P.2d 1288, 1296 (Ct. App. 1998); *State v. Baruth*, 107 Idaho 651, 657, 691 P.2d 1266, 1272 (Ct. App. 1984).

During closing argument, defense counsel argued that guilt beyond a reasonable doubt was the appropriate standard to be applied. In doing so, defense counsel stated that possible guilt, suspicion of guilt, probable guilt, and clear and convincing guilt was not sufficient to establish guilt beyond a reasonable doubt. Defense counsel also stated that if the jury was "ninety percent reasonable that [Devan] was guilty" then that "leaves room for ten percent injustice."

In rebuttal argument, the prosecutor stated:

> Gobbledygook, that's what the argument of the lawyers are, and that's what the judge has instructed you to do (indicating). So first thing I'm going to ask you to do is throw out all of the argument that the defense attorney gave you about clear and convincing evidence, yadda, yadda, yadda. That's not the standard. You won't find it anywhere in your jury instructions. You have an instruction on what reasonable doubt is. If you have any doubt about it, read it. It doesn't say anything about clear and convincing evidence. To compare the two is an error.

Devan claims that the foregoing statement was "calculated to inflame the negative emotions of the jurors, rather than elucidating the evidence and argument presented at trial." We disagree. The prosecutor was commenting on defense counsel's explanation of the proper standard. The prosecutor further asked the jury to read the jury instruction regarding the reasonable doubt standard to clarify any misunderstandings. It is proper for the prosecutor to direct the jury to follow the law and the jury instructions provided to them. *See State v. Rothwell*, 154 Idaho 125, 134, 294 P.3d 1137, 1146 (Ct. App. 2013) (determining that a

3

prosecutor's statements directing the jury to not consider the defendant's young age or possible punishment, and instead to follow the law and to consider only the crime itself, were not improper statements). Accordingly, the prosecutor's statement was not misconduct.[1]

Devan also claims that the prosecutor sought to inflame the negative emotions of the jurors by suggesting that the defense was treating the jury as infants. At trial, the State admitted photos into evidence of a footprint that portrayed a Nike symbol and a particular sole pattern. The State also admitted a pair of Nike shoes into evidence that Devan was wearing at the time of his arrest, hours after the burglary. During closing statement, defense counsel argued that the State could have called an expert witness to testify whether Devan's shoes matched the footprint found at the scene of the crime. Additionally, defense counsel argued that the investigators could have photographed Devan's shoe sitting in the imprint to determine if the size of the shoe matched the footprint.

In rebuttal argument, the prosecutor stated:

The defense is focused in on the fact the state did not send this to an expert to be tested for the size. All this is is a comparison, a pattern. A pattern from here that matches over here, just like in school when you compare triangles.
And what the defense is doing is really insulting, and you don't know it. Because when we're little, we're spoon-fed. All I've done here--and they want you to be spoon-fed. They want you to have an expert come in and tell you what you can already see. All I've done here is give you a spoon. You can feed yourself.

Later, the prosecutor returned to this theme and stated, "The only thing that the defense wants you to do is to focus in on a single thing: That this shoe wasn't measured, and punish the state for not bringing somebody in to spoon-feed you."

Devan claims that the foregoing statements made by the prosecutor amounted to inflammatory language calculated to give rise to negative emotions against him. Additionally, he claims that the prosecutor's use of the analogy of being spoon-fed was improper because it inferred that defense counsel was attempting to "infantilize" the jury.

The State argues that the prosecutor's statements were made in response to defense counsel's arguments and, therefore, did not amount to misconduct. The prosecutor's statements were an attempt to rebut defense counsel's argument that reasonable doubt existed because no

---

[1] However, again, we do not condone the use of such phrases as employed here.

expert was called to verify that the footprints found at the crime scene matched the footprint of Devan's shoes. The prosecutor artlessly directed the jury to its common-sense ability to match the print with the shoe without relying on an expert. *See State v. Norton*, 151 Idaho 176, 188-89, 254 P.3d 77, 89-90 (Ct. App. 2011) ("The prosecutor's comments here were not directed at defense counsel personally, but rather were comments on the defense theories. We conclude that the prosecutor's rebuttal argument referring to some of defense counsel's arguments as red herrings and smoke and mirrors was not misconduct.").

Devan also contends that the prosecutor committed misconduct by mischaracterizing the defense. Devan asserts that his defense included challenging the strength of the State's evidence regarding the shoeprint. He alleges that the prosecutor mischaracterized this defense by claiming that Devan was seeking to "punish the State" for not bringing in an expert witness to verify that the footprint matched his shoe. However, the prosecutor did not mischaracterize the defense but, instead, again commented on the lack of need for a shoeprint expert. Accordingly, we conclude that the statement was not misconduct rising to the level of fundamental error.

Further, even if the prosecutor's statements amounted to misconduct, Devan is still unable to establish fundamental error because any such misconduct was harmless. As discussed above, where a defendant meets his or her initial burden of showing that a constitutional violation has occurred, the State has the burden of demonstrating to the appellate court, beyond a reasonable doubt, that the violation did not contribute to the jury's verdict. *Perry*, 150 Idaho at 227-28, 245 P.3d at 979-80. In the instant case, we concluded that the prosecutor's statements did not contribute to the jury's verdict.

At trial, a witness involved in the crime testified that a group of people, including Devan, met together in Devan's motel room to discuss going to a property in a remote location and stealing several items. The group, including Devan, then met again at a co-conspirator's house and finalized plans before departing for the location of the remote property. The witness also testified: that Devan drove his mother's red Ford Expedition to the property; that upon arrival Devan stated, "if we're going to do it, let's do it,"; that Devan used a bolt cutter to cut a lock; that he entered a semi-truck trailer and the green shop; that he took gun clips; and that he drove the red Ford Expedition off the property once notified that somebody was watching them. A second witness involved in the crime similarly testified that Devan was present when the

planning for the theft was finalized. She also testified that she rode to the property in a red Ford Expedition driven by Devan and in that same manner fled from the property.

The owner of the property testified that he observed a group of people enter his property with bolt cutters, cut his wires and locks, and enter his shops and trailers. He also testified that the group wore gloves. Further, he testified that he called 911 and provided dispatch with a description of the vehicles and the license plate numbers. He reported the license plate number of the red Ford Expedition to dispatch while standing directly in front of the vehicle and reading the license plate number to dispatch over his cellular phone.

A police officer testified that shortly after the burglary was reported, he located a red Ford Expedition with the matching license plate number parked at a motel where Devan had rented a room. The officer learned that the vehicle was registered to a woman and learned the address where the vehicle was registered. As the officer watched the vehicle, Devan approached the officer and complained that someone was following him. Devan gave the officer his driver's license and the officer realized that he lived at the same address where the red Ford Expedition was registered. The officer confirmed the address with Devan and then contacted the detective at the crime scene to determine if Devan was a suspect. The detective, who at this time had learned of Devan's name from a co-conspirator, confirmed that Devan was a suspect and the officer detained Devan. The officer testified that while detaining Devan, he searched his pockets and found knives, a flashlight, and a glove.

A detective testified that he discovered several footprints at the scene of the crime, including three entire shoe tread impressions. Two impressions were discovered in the dirt leading from the vehicles to the green shop, and one impression was discovered inside the green shop. The impressions contained a Nike symbol and a zigzag design. The shoes Devan was wearing at the time of his arrest were admitted into evidence at trial. The shoes were Nike shoes that had the same tread impressions as those found at the crime scene.

Devan testified at trial and denied participating in the crimes. However, he also testified that the red Ford Expedition was his mother's vehicle and that he drove it at times. Further, he testified that he had knives, a flashlight, and a glove in his pocket when he was detained. Finally, he also testified that the tread impressions found at the crime scene appeared to match the tread of the shoes he was wearing when detained.

6

Based on the foregoing, we conclude that overwhelming evidence established Devan's guilt. Therefore, the prosecutor's comments during closing statements did not affect the outcome of the proceedings. Accordingly, Devan is unable to establish that the prosecutor's comments amounted to fundamental error.

## III.

## CONCLUSION

Devan has failed to establish reversible error. Accordingly, the district court's judgment of conviction is affirmed.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**