*John Vigna v. State of Maryland*, No. 55, September Term, 2019. Opinion by Biran, J.

**CRIMINAL LAW – CHARACTER EVIDENCE – CHARACTER OF THE ACCUSED FOR APPROPRIATENESS WITH CHILDREN** – The Court of Appeals held that, in a prosecution of a defendant for a sex crime against a minor, the defendant's character for appropriateness with children in his custody or care may be a pertinent trait of character for purposes of admissibility of character evidence under Maryland Rule 5-404(a)(2)(A). When the State objects to a defendant's proffer of opinion or reputation evidence under Rule 5-404(a)(2)(A) to establish his or her character for a particular trait, the trial court must determine whether: (1) the particular quality identified by the defendant is a "trait of character" within the meaning of Rule 5-404(a)(2)(A); and (2) evidence of such a trait of character is "pertinent," i.e., relevant to the trier of fact's consideration of the charged offenses. If the trial court answers both of these questions in the affirmative, then the court (if requested by the State) should (3) analyze the proffered evidence under Maryland Rule 5-403 to determine whether its probative value is substantially outweighed by the danger of unfair prejudice or another circumstance listed in that Rule.

**CRIMINAL LAW – CHARACTER EVIDENCE – HARMLESS ERROR** – The Court of Appeals held that any error in excluding evidence of Petitioner's character for appropriateness with children in his custody or care was harmless beyond a reasonable doubt. Testimony from parents who stated that, based on their experiences in seeing Petitioner interact with children in his custody or care, they would entrust the lives of their children and other children to him, was functionally the equivalent of an opinion that Petitioner was the type of person who was appropriate with children in his custody or care. In addition, opinion testimony of multiple defense witnesses that Petitioner was law-abiding, although broader than the excluded opinion evidence Petitioner sought to elicit, ultimately served the same purpose.

**APPELLATE PRACTICE – ABANDONMENT AND PRESERVATION OF ARGUMENTS** – The Court of Appeals held that, where Petitioner included no substantive argument in his briefs on the constitutional question for which the Court granted review, Petitioner abandoned the argument. In addition, Petitioner failed to preserve his new constitutional argument for appellate review, where he raised it for the first time in his briefs to the Court.

**CRIMINAL LAW – SIXTH AMENDMENT RIGHT TO FAIR TRIAL – DUE PROCESS** – The Court of Appeals held that, because any evidentiary error was harmless beyond a reasonable doubt, Petitioner received a fair trial under the Sixth Amendment. In addition, the trial court's adverse evidentiary ruling did not prevent Petitioner from presenting a meaningful defense. Thus, the exclusion of the proffered character evidence did not deprive Petitioner of due process.

Circuit Court for Montgomery County
Case Nos. 130781C & 129932C
Argued: March 9, 2020

IN THE COURT OF APPEALS

OF MARYLAND

No. 55

September Term, 2019

_____

JOHN VIGNA

v.

STATE OF MARYLAND

_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Opinion by Biran, J.
Watts and Hotten, JJ., concur.

_____

Filed: August 18, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

For many years, John Vigna was a popular elementary school teacher in Silver Spring, Maryland. But, as our nation has learned all too well, it is possible for a person to be a popular teacher (or coach or trainer or member of the clergy, etc.) and, at the same time, to sexually abuse children entrusted to his care. According to the evidence the jury heard in this case, Vigna sexually abused several female students while he was their teacher. The evidence showed that Vigna would have these young girls sit in his lap, and then would rub their buttocks and touch their genital areas over their clothes, or otherwise touch the girls for his sexual gratification.

At his trial, Vigna sought to elicit evidence from parents of students and from professional colleagues that, in their opinion, Vigna is the type of person who behaves appropriately with children in his custody or care. The trial judge ruled this evidence inadmissible, reasoning that appropriateness with children in one's custody or care is not a "trait of character" within the meaning of the applicable rule of evidence. However, the trial judge allowed Vigna's character witnesses to testify that Vigna is law-abiding and truthful.

The jury convicted Vigna on nine counts, and the trial judge sentenced Vigna to 80 years of imprisonment, suspending all but 48 years. The Court of Special Appeals affirmed the trial court's evidentiary rulings and upheld Vigna's convictions.

We have not previously considered whether the type of character evidence Vigna sought to introduce at his trial is proper under the Maryland Rules. For the reasons discussed below, we conclude that character evidence of appropriateness with children in one's custody or care (or of similar character traits, such as trustworthiness with children

or sexual morality with respect to children) may be admissible in a criminal case where a defendant is accused of sexually abusing a child. However, we hold that any error by the trial court in excluding such character evidence in Vigna's case was harmless beyond a reasonable doubt. We also reject Vigna's constitutional arguments based on the trial court's evidentiary rulings. Accordingly, we affirm Vigna's convictions.

# I

# Background

## A. Vigna's Career as a Teacher

Vigna was a teacher in the Montgomery County Public Schools ("MCPS") system from 1992 until his dismissal in 2016 following the emergence of the allegations that led to this criminal case. During his tenure with MCPS, Vigna taught grades three through five at Cloverly Elementary School ("Cloverly") in Silver Spring. He also coached baseball and unified bocce at nearby Paint Branch High School, handling the three roles simultaneously before the end of his employment with MCPS.

Vigna was very popular with students and other teachers. Vigna's students adored his affectionate teaching style, and many of them maintained close relationships with Vigna after they left his classroom. Vigna's fellow teachers respected his abilities as a teacher, and several entrusted him with their students when they had to attend to other matters.

According to Vigna, he treated his students like family, which for Vigna included physical displays of affection. He often hugged, kissed, and consoled students during the school day. These interactions with students did not go unnoticed by colleagues and others. Occasionally, other teachers and staff saw Vigna with students on his lap as he sat behind

2

his desk. On several occasions, these physical contacts prompted concerned observers either to speak with Vigna directly or to alert school officials about his conduct.

Jennifer Grey, a fifth-grade teacher at Cloverly, took the former approach. More than once, Ms. Grey cautioned Vigna that, "especially as a male teacher," he should not "be alone with female students one-on-one," and that he should "keep [his] distance." Another teacher at Cloverly and a close friend of Vigna, David Cline, also cautioned Vigna about engaging students too closely. Ms. Grey and Mr. Cline were not concerned about the possibility of any sexual contact with students; rather, Vigna's colleagues were "looking out for his well-being" by reminding him of professional guidelines and what they "felt was appropriate." In response to Ms. Grey, Vigna on at least one occasion asserted that he was "not doing anything wrong."

On two occasions in 2008, while Vigna was a fifth-grade teacher, Cloverly principal Melissa Brunson[1] became aware of students sitting in Vigna's lap. First, on February 28, 2008, a fire marshal reported to Dr. Brunson that, during a routine inspection, he saw a student sitting on Vigna's lap. Dr. Brunson gave Vigna a verbal warning and counseled him not to have students sit in his lap. Vigna indicated to Dr. Brunson that he understood the problem.

---

[1] MCPS documents dating from 2013 and earlier, which were introduced as exhibits at Vigna's trial, refer to Cloverly's principal as "Ms." Brunson. At trial, the parties referred to her as "Dr." Brunson. The record does not reflect when Dr. Brunson obtained her doctoral degree. We will use Dr. Brunson's current title in this opinion.

3

Second, on or about May 29, 2008, a building service worker became upset after he saw a student sitting in Vigna's lap. Vigna pursued the staff member down the hall. According to Vigna, he tried to "explain that the child was upset and that [he] was trying to meet the child's needs at that moment." The loud exchange between Vigna and the building service worker received the attention of nearby staff, including Mr. Cline, who helped to deescalate the situation and took Vigna to Dr. Brunson's office. On June 2, 2008, having received two reports of lap-sitting over a three-month span, Dr. Brunson issued a letter of reprimand to Vigna (the "2008 reprimand"), stating that his "handling of this situation was improper, unprofessional, and must not be repeated." The letter informed Vigna that further incidents could lead to his termination. Vigna signed the 2008 reprimand on June 2, 2008.

To monitor Vigna more easily, Dr. Brunson moved him from a classroom located outside the building to one next to her office. Thereafter, Vigna taught the third grade instead of the fifth grade, although fourth- and fifth-grade students often visited his classroom after dismissal, while they were waiting for their buses to be called. According to Vigna, he remained committed to his "family" style of teaching despite Dr. Brunson's warnings.

During the 2012-13 school year, prompted by a parent complaint, Dr. Brunson requested that MCPS's Office of Human Resources and Development investigate allegations that Vigna "had invited female students to sit on [his] lap, lift[ed] them in the air, and danc[ed] with them during class." During the investigation, Vigna was placed on administrative leave for approximately three weeks. In a statement that Vigna provided in

4

relation to that investigation, Vigna wrote: "I am going to restrict my activities in the classroom to strictly teaching, counseling and advising students and will make every effort to not have any physical contact at all with my students." The result of the 2012-13 investigation was that Vigna received another letter of reprimand, this time from Larry A. Bowers, the Chief Operating Officer of MCPS (the "2013 reprimand"). Referencing Vigna's two lap-sitting incidents in 2008 and Dr. Brunson's admonition to Vigna at that time, Mr. Bowers wrote, "It is difficult to believe that any teacher, especially a veteran teacher, would not understand what is respectful and professional behavior, even after receiving a reprimand." Mr. Bowers warned Vigna that he needed to "alter [his] interactions with students immediately," and that "[a]ny further instances of such unprofessional behavior may be grounds for more severe disciplinary action up to and including dismissal."

## B. The Criminal Investigation and Charges

The criminal charges against Vigna involved four girls and a young woman who all accused him of touching them in a sexual manner while they attended Cloverly.[2] The first of Vigna's former students to identify incidents of sexual abuse was A.C., who had been Vigna's student in third grade during the 2013-14 school year. Teachers knew A.C. as an engaging and attentive student. In February 2016, A.C. was in Ms. Grey's fifth-grade classroom when, during a pilot class on body safety taught by school counselor Heather

---

[2] We will refer to the victims by their initials to protect their privacy. The five former Cloverly students who testified that Vigna abused them were: friends A.C. and G.G.; L.D., who was an adult at the time of trial; and sisters A.S. and J.S.

Sobieralski, her demeanor changed. For the fifth-grade version of the body safety class, Ms. Sobieralski taught lessons on different types of abuse, starting with physical abuse. Later, she discussed sexual abuse. The PowerPoint slide she showed the class defined sexual abuse as follows: "When someone touches you or asks you to touch them on the private parts of the body (those parts covered by a bathing suit), other than to keep you clean and/or healthy." The following slide identified different types of touches, including "Unsafe/unwanted touch," which "feels uncomfortable, embarrassing or scary."

At about this point in the presentation, Ms. Sobieralski noticed that A.C. was "slumped down in her chair and staring out the window. And eventually she put her head down." Observing the near-30 student class from her desk at the front of the room, Ms. Grey saw the same thing. They both considered this behavior unusual for A.C. During a break in instruction, Ms. Grey pulled Ms. Sobieralski aside to express her concern, and Ms. Sobieralski advised Ms. Grey to check on A.C. after class. When Ms. Grey first approached her, A.C. told Ms. Grey that she was okay, but at the end of the school day about an hour later, A.C. spoke to Ms. Grey again. This time, A.C. brought up Vigna: "You know how we all love Mr. Vigna? Well, he touches us in ways that make[] us feel uncomfortable." Ms. Grey then took A.C. to Ms. Sobieralski's office. After Ms. Sobieralski asked A.C. to explain how Mr. Vigna makes her feel comfortable, A.C. responded, "when he hugs me he touches my butt. And he makes me sit on his lap, and when I try to get up he doesn't let me." A.C. said this activity occurred when she was in Vigna's third-grade class and continued when she regularly went to say goodbye to him in the fourth and fifth grades.

6

A.C. then met with a forensic social worker, Sara Kulow-Malave, at the Tree House Child Advocacy Center of Montgomery County. There, A.C. described how Vigna made girls feel uncomfortable. She told Ms. Kulow-Malave that Vigna touched her buttocks and made her sit on his lap. A.C. said that Vigna would rub her thighs with his hands and breathed steadily more and more heavily as she sat on his lap. She also stated that when she was on Vigna's lap, she could feel a "hard" part of his body "under her butt." When Ms. Kulow-Malave asked A.C. to show on an anatomical drawing where the hard part of Vigna's body was, she circled the waistline. A.C. told Ms. Kulow-Malave that the first time Vigna made A.C. feel uncomfortable was during her second-grade year, and that the most recent time was just a few days before the body safety class with Ms. Sobieralski.

During her discussion with Ms. Sobieralski and again with Ms. Kulow-Malave, A.C. also claimed that she saw Vigna touch her friend, G.G., inappropriately. G.G. never had Vigna as her primary teacher but would accompany A.C. when she visited his classroom after the final bell of the day. A.C. said that Vigna moved his hand over G.G.'s buttocks while giving her a hug.

On February 12, 2016, the day after her interview with A.C., Ms. Kulow-Malave interviewed G.G. In addition to describing her own encounter with Vigna, G.G. corroborated A.C.'s account of repeated uncomfortable touches. G.G. explained how Mr. Vigna touched them differently during their hugs, and described how Vigna "squeezed" A.C.'s buttocks.

Vigna was removed as a teacher at Cloverly immediately after these allegations of sexual abuse surfaced. A criminal investigation ensued. On June 23, 2016, Vigna was

charged in the District Court of Maryland sitting in Montgomery County with various sex offenses relating to his alleged abuse of A.C. and G.G. In July 2016, the charges were forwarded to the Circuit Court for Montgomery County.

The investigation continued, and three more victims came forward. L.D., a young adult, learned about the charges against Vigna through a Facebook group of Cloverly alumni. She then contacted police and reported incidents of sexual abuse by Vigna between August 2001 and June 2002, when Vigna was her fourth-grade teacher. According to L.D., she and Vigna interacted frequently during her time at Cloverly. L.D. alleged that Vigna would sit her and her friend on his lap, and touch her on her crotch. L.D. described one particular instance of abuse while she was sitting on Vigna's lap:

> [H]e was talking to some boys across the desk, and every time he talked, I felt his finger on my crotch. And I remember this so well, even though it was so many years ago, because I felt sexually aroused when that happened. I felt like that tingly sensation, and that's when I knew something wasn't right.

According to L.D., Vigna would engage in this touching activity when there was a lot of commotion in the room, as children waited for their buses. L.D. said that other children could not see Vigna touch her because their view was blocked by his desk. Vigna had L.D. kiss him on his cheek during her visits prior to leaving for the school bus. She also described one instance when she had to change her clothes, and Vigna said she could use the closet in his classroom. They were the only two people in the room at the time, and L.D. remembered feeling uncomfortable as the closet door was left ajar.

Two more of Vigna's former students came forward with similar accounts. A.S., a sixth-grader at the time of the trial, reported that when Vigna was her third-grade teacher,

he touched her weekly, or perhaps even more often, in ways that made her uncomfortable. In particular, A.S. said that Vigna had her sit on his lap at his desk while the rest of the class faced away to watch a video. On multiple occasions, he then touched her genitals, buttocks, and chest area over her clothes. Sometimes he kissed the top of her head and asked her for a kiss on the cheek. According to A.S., Vigna told her that he loved her and that she was beautiful while he held her on his lap.

J.S., who is A.S.'s sister and one year younger, claimed that, when Vigna was her third-grade reading teacher, he would "call me over to the back table, just me and him, and then he would make sure I sat right next to him, and then he would start hugging me. He would start touching my butt."

In a superseding indictment filed on December 1, 2016, the State added charges related to the alleged sex abuse of L.D., A.S., and J.S. Ultimately, the State proceeded on two counts from the first indictment, which were consolidated with 12 counts contained in the second indictment. The charges included multiple counts of sexual abuse of a minor[3] and third-degree sex offense.[4]

---

[3] "A … person who has … temporary care or custody or responsibility for the supervision of a minor may not cause sexual abuse to the minor." Md. Code Ann., Crim. Law ("CR") § 3-602(b)(1) (2012). With respect to L.D., the indictment charged a violation of Article 27, § 35(C)(b)(1), of the Maryland Code, the predecessor statute to CR § 3-602(b), which was in effect at the time that Vigna allegedly abused L.D.

[4] "A person may not: … engage in sexual contact with another if the victim is under the age of 14 years, and the person performing the sexual contact is at least 4 years older than the victim." CR § 3-307(a)(3). At the time of Vigna's alleged abuse of L.D., this offense was codified at Article 27, § 464(A) of the Maryland Code.

### C. Pretrial Hearing on Character Evidence

Prior to trial, Vigna filed a motion *in limine* seeking a ruling allowing him to introduce pertinent character evidence under Maryland Rule 5-404(a)(2)(A), which provides: "An accused may offer evidence of the accused's pertinent trait of character. If the evidence is admitted, the prosecution may offer evidence to rebut it." At a pretrial hearing on this motion on June 5, 2017, Vigna's counsel argued that Vigna should be allowed to introduce character evidence of three pertinent traits: truthfulness, law-abidingness, and appropriate interaction with children in his custody or care. The State did not challenge Vigna's ability to introduce evidence as to his character for truthfulness and law-abidingness. However, the State objected to the admission of character evidence of Vigna's appropriateness with children in his custody or care. While Vigna acknowledged that it would be improper to have former students specifically testify that Vigna did not abuse them, he argued that he should be allowed to introduce "classic reputation" and/or "classic opinion" evidence concerning his "character for interacting appropriately" with children in his custody or care.

The trial court ruled that evidence concerning Vigna's character for the traits of truthfulness and being law-abiding would be admissible. As for Vigna's character for appropriateness with children in his custody or care, the court commented that, unlike the traits of honesty, peacefulness, and law-abidingness, which "span across all walks of life and all categories of interaction with people," the trait proffered by Vigna seemed too "unique and specific and limited … to be considered a character trait." The court reserved ruling with respect to the admissibility of this third category of character evidence.

## D. The Trial and Appeal

Vigna's jury trial began on June 6, 2017, in the Circuit Court for Montgomery County, and concluded on June 9, 2017. The five victims discussed above all testified in the State's case-in-chief. Each victim described how Vigna touched her buttocks and/or genital area. The State called the social workers who interviewed A.C., G.G., A.S., and J.S., and played for the jury the videos of those interviews. Ms. Grey testified about having seen Vigna with students in his lap a "handful of times." In addition, over Vigna's objection, Dr. Brunson testified about the circumstances that led to Vigna's prior discipline, and the court admitted both the 2008 reprimand and the 2013 reprimand as exhibits. The court admitted this testimony and the letters of reprimand under Maryland Rule 5-404(b).[5] The court found that this evidence was admissible to demonstrate Vigna's intent, knowledge, and absence of mistake.

Vigna testified in his own defense, and denied that he ever touched any of his students for sexual gratification. He claimed that touching a student inappropriately was "simply against the fiber of [him]." He acknowledged that he had often hugged students, had them sit on his lap, and told them that he loved them. He claimed that his teaching style, which included these types of displays of affection, was the result of having grown up in a large Italian family that emphasized physical affection. He explained that his

---

[5] "Evidence of other crimes, wrongs, or acts … is not admissible to prove the character of a person in order to show action in conformity therewith. Such evidence, however, may be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident." Md. Rule 5-404(b).

teaching philosophy included treating a class like a family and the students as if they were his own children. Vigna testified that he made an effort to change his teaching style after he was reprimanded in 2013, but that the students continued to "hop on [his] knee" and initiate hugs with him, and that he was not going to push them away. Vigna attributed any contact that a student could have interpreted as sexual to be the result of an accidental touching.

In addition to testifying himself, Vigna called nine witnesses in his defense case. Seven of these were character witnesses. They included Dr. Brunson's predecessor as the Cloverly principal; fellow Cloverly teachers; parents of former female students in Vigna's classes; a fellow coach and the athletic director at Paint Branch High School; and Vigna's 12-year-old niece.[6] Prior to these character witnesses testifying, the trial judge took up the question on which he had reserved ruling, i.e., whether appropriate interaction with children is a proper character trait. The court concluded that it is not:

> I think that the proper character category would be character for …
> lawfulness or law[-]abiding citizen, something like that. Because the other
> one seemed so specific and so – it doesn't seem like a character trait to me.
> It seems more like – it seems like it's too narrow and too specific to be a
> character trait. So, but I think the more general notion of that request is that
> Mr. Vigna is generally a law-abiding person or I think that's more consistent
> with a character trait, which is what the rule permits. So to that extent, I'll
> grant the defendant's motion to permit character evidence on that character
> trait.

---

[6] The other two defense witnesses, who were teachers at Cloverly, testified as fact witnesses to circumstances that called into question the accuracy of some of the victims' testimony.

The court also confirmed that the character witnesses would be permitted to testify as to Vigna's character for truthfulness.

Six of the seven character witnesses testified to their opinion that Vigna possessed a character for being law-abiding. Those character witnesses provided extensive testimony concerning Vigna's interactions with children in his custody or care in the course of opining as to his law-abidingness. For example, Janet Lopez, the principal of Cloverly from 2004 to 2007, testified that she made unannounced classroom visits and "saw [Vigna] with children every day." Based on her observations, Ms. Lopez opined that Vigna was law-abiding.

Kristen Delikat, a former colleague of Vigna's at Cloverly for eight years, testified that she worked closely with Vigna when she was a reading specialist. Ms. Delikat often observed Vigna in his classroom. Ms. Delikat testified that she never saw Vigna touch or put a student in his lap. She, too, opined that Vigna was a law-abiding person.

The Paint Branch athletic director, Heather Podesek, testified that she knew Vigna from his work as a bocce coach and his volunteering as a baseball coach, as well as Vigna's service as the Vice President of the Paint Branch Athletic Association. Ms. Podesek testified that she would often watch Vigna's interaction with his players and the student coaches, and saw Vigna's "positive interactions . . . with his student athletes." Based on her years of knowledge of, and experience with, Vigna, Ms. Podesek also opined that he was a law-abiding person.

Jill Doll, the parent of two girls who had been in Vigna's fifth-grade classes in the 2006-07 and 2009-10 school years, testified about her interactions with Vigna as a parent

13

volunteer and a substitute teacher. She told the jury that she had seen Vigna interacting with students and trusted him with them, noting that this included trusting him "with the lives of [her] children."

Irena Nalls, whose daughter was in Vigna's third-grade class in 2014-15, testified that, as a room parent, she often visited Vigna's classroom. She assisted with and observed various parties in Vigna's classroom, including parties for Halloween, Valentine's Day, and the end of the school year. Ms. Nalls explained that she would stay in the room after these parties to help clean up while the children were still in the classroom before dismissal. Based on her experiences and observations, Ms. Nalls also opined that Vigna was law-abiding.

Terry Conrad, a parent whose daughter had been in Vigna's class and who coached youth sports and high school baseball with Vigna, testified that Vigna was law-abiding and that he trusted Vigna "with [his] life."

Vigna's 12-year-old niece testified that, after her father died when she was in the third grade, Vigna was like a father to her. She spent time with Vigna and trusted him. She further testified that she saw Vigna with other children when he was a parent chaperone on her field trips. She provided her opinion that Vigna obeyed the law.

The character witnesses also testified to their opinion that Vigna was truthful.[7]

---

[7] In its rebuttal case, the State called Mr. Cline and recalled Ms. Grey and elicited evidence concerning specific instances of alleged untruthfulness by Vigna, as permitted under Maryland Rule 5-404(a)(2)(A). In addition, in an effort to rebut the character evidence concerning Vigna being law-abiding, the State elicited testimony that Vigna had smoked marijuana several times.

The jury found Vigna guilty on nine of the 14 counts with which he was charged. The circuit court subsequently sentenced Vigna to 80 years in prison, with all but 48 years suspended.

The Court of Special Appeals affirmed Vigna's convictions. *Vigna v. State*, 241 Md. App. 704 (2019). As pertinent here, the intermediate appellate court held that: (1) in resolving a question of first impression in Maryland, "appropriate interaction with children" is not a pertinent character trait under Rule 5-404(a)(2)(A); and (2) the circuit court's evidentiary rulings did not deprive Vigna of his right to a fair trial under the Sixth Amendment to the United States Constitution.

On September 24, 2019, Vigna filed a petition for *certiorari.* On November 6, 2019, we granted Vigna's petition. 466 Md. 311 (2019). We agreed to review the following questions (which we paraphrase here slightly):

I.      Did the Court of Special Appeals err by contradicting the majority of other jurisdictions in holding that appropriate interaction with children is not a pertinent character trait under Maryland Rule 5-404(a)(2)(A)?

II.     Did the Court of Special Appeals err when it failed to recognize that denying Vigna the ability to introduce relevant character evidence, while at the same time allowing the State to introduce non-criminal "bad acts" character evidence, denied Vigna the right to a fair trial under the Sixth Amendment of the United States Constitution?

## II

## Standard of Review

Although an evidentiary ruling, including the decision to admit or exclude character evidence, is typically reviewed for abuse of discretion, *see, e.g.*, *Devincentz v. State*, 460 Md. 518, 539 (2018), in this case the circuit court excluded Vigna's proffered character evidence based on its determination that appropriate interaction with children in one's custody or care is "too narrow and too specific to be a character trait" under Rule 5-404(a)(2)(A). The Court of Special Appeals affirmed the circuit court, framing the question as whether the proffered character evidence was relevant to the specific crimes with which Vigna was charged. *See Vigna*, 241 Md. App. at 718. The Court of Special Appeals considered that to be a question of statutory interpretation requiring *de novo* review. *Id.* at 717. We agree with the Court of Special Appeals that *de novo* review is appropriate for this question. *See Williams v. State*, 457 Md. 551, 563 (2018) (contrasting the decision whether a piece of evidence is relevant, which is a legal conclusion reviewed *de novo*, with the decision to admit relevant evidence, which is reviewed for abuse of discretion). We also review constitutional claims *de novo*. *See, e.g., State v. Cates*, 417 Md. 678, 691 (2011); *Schisler v. State*, 394 Md. 519, 535 (2006).

## III

## Discussion

Vigna contends before us that the circuit court improperly excluded the proffered evidence concerning his character for appropriate interaction with children in his custody or care, and that this error was not harmless beyond a reasonable doubt. In addition, Vigna

16

asserts that the circuit court's evidentiary rulings violated his constitutional rights to due process and a fair trial.[8]

We hold that appropriateness with children in one's custody or care may be a "pertinent trait of character" within the meaning of Rule 5-404(a)(2)(A). However, we conclude that any error in the circuit court's exclusion of such evidence in Vigna's case was harmless beyond a reasonable doubt. As for Vigna's constitutional arguments, Vigna abandoned his Sixth Amendment claim and failed to preserve a due process claim for appellate review. In any event, both constitutional claims lack merit.

## A. Appropriateness with Children in One's Custody or Care May Be a Pertinent Character Trait for Purposes of Maryland Rule 5-404(a)(2)(A).

### 1. Character Evidence under Maryland Rule 5-404(a)

Maryland Rule 5-404(a)(1) provides that "evidence of a person's character or character trait is not admissible to prove that the person acted in accordance with the character or trait on a particular occasion." However, there are exceptions to this rule. As pertinent here, a defendant in a criminal case "may offer evidence of [his or her] pertinent trait of character. If the evidence is admitted, the prosecution may offer evidence to rebut it." *Id.* § 5-404(a)(2)(A).[9]

---

[8] In the Court of Special Appeals, Vigna also asserted claims of evidentiary error relating to the admission of the 2008 and 2013 reprimands under Maryland Rule 5-404(b), as well as the admission of A.C.'s statements to Ms. Sobieralski under Maryland Rule 5-802.1(d), which is a hearsay exception for a "prompt complaint of sexually assaultive behavior to which the declarant was subjected." The intermediate appellate court rejected these contentions, and Vigna did not seek further review of those questions in this Court.

[9] The Rule also contains exceptions that allow: (1) a criminal defendant, in certain circumstances, to offer evidence of an alleged crime victim's pertinent trait of character,

17

Maryland Rule 5-404 derives from its similarly numbered federal counterpart, Federal Rule of Evidence 404. The original Advisory Committee Note to Federal Rule of Evidence 404(a) explained that

> [c]haracter questions arise in two fundamentally different ways. (1) Character may itself be an element of a crime, claim, or defense. A situation of this kind is commonly referred to as "character in issue." Illustrations [include] … the competency of the driver in an action for negligently entrusting a motor vehicle to an incompetent driver. No problem of the general relevancy of character evidence is involved, and the present rule therefore has no provision on the subject. The only question relates to allowable methods of proof, as to which see Rule 405,[10] immediately following. (2) Character evidence is susceptible of being used for the purpose of suggesting an inference that the person acted on the occasion in question consistently with his character. This use of character is often described as "circumstantial." Illustrations are: evidence of a violent disposition to prove that the person was the aggressor in an affray, or evidence of honesty in disproof of a charge of theft. This circumstantial use of character evidence raises questions of relevancy as well as questions of allowable methods of proof.

We are concerned here with a defendant's effort to elicit "circumstantial" character evidence. Specifically, Vigna argues that a defendant, who has been accused of sexually abusing a child in his custody or care, should be permitted to introduce evidence of his

---

subject to rebuttal evidence being introduced by the prosecutor, *id.* § 5-404(a)(2)(B); (2) a prosecutor to offer evidence in a homicide case of an alleged victim's trait of peacefulness to rebut evidence that the victim was the first aggressor, *id.* § 5-404(a)(2)(C); and (3) a party in any type of case to offer evidence, under certain circumstances, "of the character of a witness with regard to credibility," *id.* § 5-404(a)(3).

[10] The Maryland Rules also include a counterpart to Federal Rule of Evidence 405, which governs the methods of proof a proponent of character evidence may use. As pertinent here, Maryland Rule 5-405 provides: "In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct."

character for being appropriate in interactions with children in his custody or care, so that he may then ask the jury to infer from such evidence that it is less likely he committed the charged offense.

This Court has not previously considered whether evidence concerning the character of a defendant for appropriateness with children (or similar traits) may be admissible in a criminal case where the defendant is charged with a sex crime against a child. To help inform our resolution of this question, we examine similar cases from other jurisdictions.

2. Case Law Concerning Character Evidence in Child Sex Abuse Prosecutions

The majority of the out-of-state courts that have considered this issue have held that appropriate interaction with children, sexual morality, and other similar formulations of traits relating to sexual disposition, may be pertinent character traits in child sex abuse cases. *See State v. Rothwell*, 294 P.3d 1137, 1143 (Idaho Ct. App. 2013) (holding that "character traits relating to a defendant's sexual morality with children are pertinent"); *State v. Enakiev*, 29 P.3d 1160, 1163 (Or. Ct. App. 2011) ("Evidence of a person's character with respect to sexual propriety evinces that person's propensity to act in a sexually proper manner," and therefore may be admissible as a pertinent trait in a prosecution for a sex crime); *State v. Rhodes*, 200 P.3d 973, 976 (Ariz. Ct. App. 2008) (holding that defendant's "sexual normalcy, or appropriateness in interacting with children, is a character trait, and one that pertains to charges of sexual conduct with a child"); *State v. Hughes*, 841 So. 2d 718, 723 (La. 2003) (*per curiam*) (in case where defendant was charged with aggravated rape and other offenses involving child molestation, holding that "a defendant may present evidence of his or her reputation in the community as a moral person and for safe and

19

proper treatment of young children"); *People v. McAlpin*, 812 P.2d 563, 575-76 (Cal. 1991) (holding that character witnesses should have been permitted to testify to opinion that defendant was not "a person given to lewd conduct with children" and that he had a reputation for "normalcy in his sexual tastes," which included not having "a reputation for being sexually attracted to young girls"); *State v. Benoit*, 697 A.2d 329, 331 (R.I. 1997) (where defendant was convicted of child molestation sexual assault charges, remanding case to trial court to consider whether proffered character witness had sufficient basis to provide an opinion concerning defendant's "trustworthiness with children or other pertinent character traits"); *State v. Hallman*, 379 S.E.2d 115, 117 (S.C. 1989) (trial court erred by excluding character evidence of defendant's "morality" in prosecution for sexual offenses against a minor); *see also Wheeler v. State*, 67 S.W.3d 879, 882 (Tex. Crim. App. 2002) (noting that defendant "was entitled to proffer evidence of his good character (or propensity) for moral and safe relations with small children or young girls"); *State v. Griswold*, 991 P.2d 657, 663 (Wash. Ct. App. 2000) (in case where defendant was charged with third degree child molestation, stating that "sexual morality is a pertinent character trait"); *State v. Miller*, 709 P.2d 350, 353-54 (Utah 1985) (where defendant was accused of sexually abusing a child, noting that defendant was permitted to introduce "reputation or opinion testimony to prove good moral character"); *McMullin v. State*, 486 S.W.3d 818, 820-21 & n.1 (Ark. Ct. App. 2018) (citing *Rothwell* for the proposition that "a relevant trait of good character could be proved by reputation or opinion evidence," which the trial court had allowed the defendant to do; but affirming the trial court's exclusion of evidence of

specific instances of conduct to prove the trait of "sexual morality with respect to minors") (cleaned up).

A minority of courts, on the other hand, have reasoned that character traits similar to the trait at issue here are not "pertinent" in child sex abuse prosecutions, because sex crimes generally occur in private. Thus, according to these courts, evidence of a defendant's reputation in the community for appropriate interaction with children, based on public observation, does not make it more likely that the defendant is innocent of a sex crime he is alleged to have committed in private. *See State v. Jackson*, 730 P.2d 1361, 1364 (Wash. App. Ct. 1986) ("The crimes of indecent liberties and incest concern sexual activity, which is normally an intimate, private affair not known to the community. One's reputation for sexual activity, or lack thereof, may have no correlation to one's actual sexual conduct.")[11]; *Hendricks v. State*, 34 So. 3d 819, 822, 825-26 (Fla. Dist. Ct. App. 2010) (in child molestation case, affirming exclusion of evidence that defendant had an "excellent" reputation for sexual morality; because "a person's tendency, or lack thereof, to commit acts of child molestation is not something that a community tends to have knowledge of, testimony concerning a person's reputation for having such a trait is inherently unreliable and distinguishable from traditionally admissible reputation evidence"); *State v. Graf*, 726

---

[11] In *State v. Griswold*, cited above, a different Washington intermediate appellate division court disagreed with *Jackson*. *See Griswold*, 991 P.2d at 663. The *Griswold* Court suggested that the Washington Supreme Court's holding concerning a character evidence jury instruction in the post-*Jackson* case of *State v. Thomas*, 757 P.2d 512 (1988), indicated that the state's highest court approved of the type of character evidence *Jackson* had not allowed. To date, the Washington Supreme Court has not resolved this split in Washington's intermediate appellate courts.

A.2d 1270, 1274-75 (N.H. 1999) (in sexual assault case involving a minor victim, relying on *Jackson* to hold that proffered evidence that defendant was "not the type of person to sexually assault or to take advantage of children" was irrelevant and, therefore, properly excluded at trial).

In *Rothwell*, the case upon which Vigna most relies, the Court of Appeals of Idaho considered the majority and minority lines of cases on this question and adopted the majority position, rejecting the argument that the secretive nature of child sexual abuse renders character evidence of sexual morality inadmissible:

> We conclude the majority rule is correct. Because character traits relating to a defendant's sexual morality with children are pertinent, or relevant, in this type of case, such evidence is admissible under I.R.E. 404(a)(1). We recognize that sexual abuse is usually secret behavior that would not be observed by others, and therefore the opinion or reputation evidence about a defendant's trustworthiness with children may be of marginal persuasiveness. The same can be said, however, of many types of criminal activity. It appears that Rule 404(a)(1) was nevertheless intended to allow an accused the opportunity to present evidence of good character that is pertinent to the nature of the charged offense. The unlikelihood that the character witnesses would have been in a position to witness criminal conduct of the defendant goes to the weight of character evidence, not its admissibility.

294 P.3d at 1143. The *Rothwell* Court confirmed that a defendant who seeks to introduce such evidence through a witness first must establish that the witness has a sufficient foundation of knowledge to opine or provide reputation evidence about the defendant's sexual morality with children. *Id.* at 1143-44. In addition, the Court noted that a trial court retains the authority to exclude such character evidence under Idaho's equivalent to

22

Maryland Rule 5-403,[12] if the trial court finds that the probative value of the character evidence is substantially outweighed by the danger of, among other things, unfair prejudice, confusing the issues, or misleading the jury. *Id.* at 1144.

3. A Blanket Rule of Exclusion of Character Evidence of Appropriateness with Children in One's Custody or Care Is Erroneous.

Like the *Rothwell* Court, we adopt the majority position among the courts around the country that have considered this question, and hold that evidence of a defendant's character for appropriateness with children in his or her custody or care (or a similarly worded trait) may be admissible in a case where the defendant is charged with sexual abuse of a minor or a similar crime against a child.

The Court of Special Appeals opted for the minority position, based on its view that such character evidence can never be relevant in a child sex abuse case. *See Vigna*, 241 Md. App. at 719-24. The intermediate appellate court reached this conclusion for two reasons. First, the court accepted the reasoning of *Jackson* and *Hendricks* that, due to the "secretive nature of sexual crimes, and sexual activity in general, a defendant's reputation for sexual activity, or the lack thereof, [bears] no correlation to the likelihood that they committed the crimes charged." *Id.* at 720. In this regard, the court observed that, "[u]nlike one's reputation for honesty or peacefulness, traits that might be noticed by the community,

---

[12] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Md. Rule 5-403.

23

whether one secretly molests children or does not would not be openly exhibited." *Id.* at 721.

Second, the Court of Special Appeals observed that sexual predators often gain special access to children for the very reason that they are able to appear "appropriate" (and trustworthy, moral, etc.) in their interactions with children:

> Sexual predators are "not instantly recognizable as the 'dirty old man in the raincoat.'" Anne-Marie McAlinden, *Setting 'Em Up: Personal, Familial, and Institutional Grooming in the Sexual Abuse of Children*, 15 SOC. AND LEGAL STUD. 339, 348 (2006). They blend into the community and often stand in trust relationships—coaches, clergy, teachers, physicians, or family members—with their victims. *Id.* Offenders "groom" victims through these relationships and "skillfully manipulate a child into a situation where he or she can be more readily sexually abused and is simultaneously less likely to disclose." *Id.* at 346. Recent news accounts demonstrate how offenders exploit trust relationships, not only with children but also their parents and the community at large, to gain access to victims. Before these allegations became public, there undoubtedly were colleagues, parents, and other children who could have testified honestly that they believed those abusers were appropriate with children and much beloved by the community for the strong relationships they formed with them.
>
> To admit a community member's opinion about a defendant's reputation for propriety with children would fail to "consider that sex offenders may [ ] groom not just the child but also their family or the wider community as a necessary prerequisite to gaining access" to child victims. *Id.* at 341. In this way, they "ingratiate themselves with children and infiltrate themselves into unsuspecting ... communities.... To do this successfully, they must pass themselves off as being very nice, usually, men who simply like children." *Id.* at 348. This is not to suggest that teachers, clergy, or other adults with close relationships with children should inherently be regarded with suspicion, or that their close relationships with children suggest impropriety with children. But an adult's public interaction with children under his care doesn't make it any more or less likely that the alleged victims were abused by him privately. And because it's not relevant, it's not admissible under Rule 5-404(a)(2)(A).

*Vigna*, 241 Md. App. at 722-23 (footnotes omitted).

24

We disagree with the Court of Special Appeals' reliance on *Jackson* and *Hendricks.* Rather, we agree with the *Rothwell* Court that "[t]he unlikelihood that the character witnesses would have been in a position to witness criminal conduct of the defendant goes to the weight of character evidence, not its admissibility." 294 P.3d at 1143. To be sure, child sexual abusers do not usually commit their crimes in the view of others in the community from whom character witnesses are drawn.[13] But, as the Court observed in *Rothwell*, the same can be said of other cases in which character evidence is routinely admitted. *Id.* For example, it is common for a defendant accused of a fraud offense to offer opinion and reputation testimony about the defendant's character for honesty. *See, e.g.*, *Grant v. State*, 55 Md. App. 1, 39 (1983) (noting that a defendant's "reputation for truth and veracity would be relevant upon the trial of a charge such as perjury, false pretenses, or embezzlement"); *In re Sealed Case*, 352 F.3d 409, 413 (D.C. Cir. 2003) (evidence of a defendant's character for truthfulness and honesty is admissible in cases involving fraud or false statements). In such cases, prosecutors frequently elicit on cross-examination that the character witness did not work in the defendant's allegedly fraudulent company or otherwise have any knowledge about the transactions at issue in the indictment. Such cross-examination often is powerful, resulting in the proffered character evidence having

---

[13] However, as Vigna points out, there have been well publicized incidents in which colleagues of sexual predators allegedly became aware of the conduct at the time it was happening. *See, e.g.*, Tom Winter, Hannah Rappleye & Tracy Conner, *Sandusky Case Bombshell: Did 6 Penn State Coaches Witness Abuse?,* NBC News (May 6, 2016), available at https://www.nbcnews.com/news/us-news/sandusky-case-bombshell-did-6-penn-state-coaches-witness-abuse-n569526 (accessed on Aug. 3, 2020), archived at https://perma.cc/7GGZ-9JSY.

25

"marginal persuasiveness" to the jury. *Rothwell*, 294 P.3d at 1143. However, we certainly cannot say that such challenged character evidence – or the character evidence that Vigna wanted to elicit in this case – will never have any relevance to a properly instructed jury.

In addition, although we understand that child sex abusers frequently engage in "grooming" activity – with respect to child victims, as well as to their parents and other adults in the community – it does not follow that evidence that an alleged abuser has the character of appropriately interacting with children is categorically irrelevant. As the Court of Special Appeals correctly observed, not all close relationships between children and "teachers, clergy, or other adults … suggest *impropriety*." *Vigna*, 241 Md. App. at 723 (emphasis in original). Indeed, most adults in positions of trust with children undoubtedly choose to occupy those positions because they want to help children, not abuse them. For this reason, we believe that the Court of Special Appeals' reliance on the grooming activity of *convicted* child sexual abusers to prevent an *accused* child sexual abuser from introducing character evidence of his appropriateness with children encroaches on the latter's presumption of innocence. This we cannot allow. *See, e.g., Montgomery v. State*, 292 Md. 84, 91 (1981) (listing the presumption of innocence among the "bedrock characteristics" that "are indispensable to the integrity of every criminal trial"), *overruled on other grounds by Unger v. State*, 427 Md. 383 (2012); *see also* Rinat Kitai, *Presuming Innocence*, 55 Okla. L. Rev. 257, 265 (2002) ("This presumption [of innocence prior to conviction] is a general one, granted equally to every person even before the onset of the investigation and trial, and independent of prior conditions such as her status, the amount of incriminating evidence, or her criminal history.").

26

However, the State is not powerless when it comes to challenging the probative value of character evidence of appropriateness with children (as well as other positive traits such as law-abidingness and truthfulness) where there is evidence that the defendant engaged in grooming conduct not just toward children, but also toward the community as a whole. To the extent the State possesses such evidence, the State may seek to introduce expert testimony on such grooming to assist the jury in understanding its significance. *See Coates v. State*, 175 Md. App. 588, 607 (2007) (expert witness "described the process of 'grooming,' in which an abuser gains a child's trust through special attentiveness"); *see also United States v. Romero*, 189 F.3d 576, 585 (7th Cir. 1999) (affirming admission of expert testimony on the "modus operandi of modern child molesters").[14] This, in turn, may provide the jury with insight as to how someone accused of a horrible crime against a child may nevertheless have a stellar reputation in the community for appropriate interaction with children and other positive traits of character. In addition, the prosecutor may cross-examine the character witness concerning specific uncharged acts of inappropriateness. *See* Md. Rule 5-405(a). And, as discussed above, the prosecutor often will score points on cross-examination of such a character witness, even without going into specific acts of inappropriateness.

---

[14] This observation should not be taken to suggest that expert testimony is always necessary before the State (or the defense) may refer in closing arguments to evidence of a defendant's conduct as "grooming" or the lack thereof. *See Dandass v. State*, 233 So. 3d 856, 868-69 (Miss. Ct. App. 2017) (holding that prosecutor's reference in closing argument to defendant's "grooming" of victim, without supporting expert testimony, was not improper in light of the victim's testimony). We express no opinion on the factors that would permit (or require) expert testimony on "grooming" in any particular case.

Although the juries in many child sex abuse cases probably will not find reasonable doubt of guilt after hearing character evidence of the defendant's appropriateness with children, it does not follow that there is no relevance to such character evidence. While not all people who have reputations for appropriate interaction with children in their custody or care refrain from sexually abusing some of those children, we expect that almost all people in positions of trust toward children who *do* refrain from sexually abusing those children, over time, will have built reputations in their community for appropriateness with children. Although research suggests that false allegations of child sexual abuse are very rare,[15] they have occurred.[16] For an innocent teacher, coach, or other person occupying a position of trust who has been falsely accused of child sexual abuse, the ability to introduce opinion or reputation evidence from respected members of the community about the defendant's appropriateness with children in his custody or care may not only be relevant, but also crucial to avoid a miscarriage of justice. We have confidence that juries will be able to appropriately weigh such character evidence in conjunction with all the other relevant evidence they receive in child sexual abuse cases.

---

[15] *See, e.g.*, The Leadership Council on Child Abuse & Interpersonal Violence, *How Often Do Children's Reports of Abuse Turn Out to Be False*, available at http://www.leadershipcouncil.org/1/res/csa-acc.html (summarizing several studies that all concluded such false allegations occurred in single-digit percentage ranges) (accessed on Aug. 4, 2020), archived at https://perma.cc/T3KP-GJJT.

[16] *See* Caroline Hendrie, *Living Through a Teacher's Nightmare: False Accusation*, Education Week, https://www.edweek.org/ew/articles/1998/12/09/15false.h18.html, Dec. 9, 1998 (accessed on Aug. 4, 2020), archived at https://perma.cc/6A7K-6SQH.

In sum, we decline to adopt a *per se* rule that character evidence of appropriateness with children in one's custody or care (or similar traits) is never relevant in a criminal case where the defendant is charged with a sex crime against a child. Rather, as we discuss in the next section, the trial court must conduct an individualized, three-part analysis to determine whether such evidence is admissible.

4. <u>The Test for Admissibility of Character Evidence Under Rule 5-404(a)(2)(A)</u>

When the State objects to a defendant's proffer of opinion or reputation evidence under Rule 5-404(a)(2)(A) to establish his or her character for a particular trait, the trial court must determine whether: (1) the particular quality identified by the defendant is a "trait of character" within the meaning of Rule 5-404(a)(2)(A); and (2) evidence of such a trait of character is "pertinent," i.e., relevant to the trier of fact's consideration of the charged offenses. If the court answers both of these questions in the affirmative, then the court (if requested by the State) should (3) analyze the proffered evidence under Rule 5-403 to determine whether its probative value is substantially outweighed by the danger of unfair prejudice or another circumstance listed in that Rule.[17]

a. *Whether a Quality Is a "Trait of Character"*

Rules 5-404 and 5-405 do not define what constitutes "character" or a "trait of character"; neither do their counterparts in the Federal Rules of Evidence, in what one

---

[17] A pretrial motion *in limine* is typically the best way to address the admissibility of character evidence. That is the approach the parties took in this case. However, if neither party requests a pretrial ruling on the admissibility of character evidence, if the State objects to (or requests an offer of proof regarding) character evidence the defendant seeks to admit under Rule 5-404(a)(2)(A), the trial court should conduct this analysis outside the presence of the jury.

commentator has said "is perhaps a nod to the impracticality of defining [character]." Barrett J. Anderson, *Recognizing Character: A New Perspective on Character Evidence*, 121 Yale L.J. 1912, 1923 (2012). The Advisory Committee Notes to Federal Rule of Evidence 405 at the time of its adoption "are just as imprecise, listing several examples of character traits, such as honesty, peacefulness, and violence, and then stating generally that 'character is defined as the kind of person one is.'" *Id.* There is scant additional guidance as to what constitutes a "trait of character" for purposes of admitting character evidence in a criminal trial. However, a proffered character trait cannot be "so diffuse as to be merely synonymous with good character generally, which is not admissible." *United States v. Angelini*, 678 F.2d 380, 381 (1st Cir. 1982). As the Court in *Angelini* explained, Federal Rule of Evidence 404(a)(2)(A), from which Maryland Rule 5-404(a)(2)(A) is derived,

> permits evidence of traits only; an earlier draft was modified, deleting language that would have allowed the introduction of evidence of a defendant's character generally. *See* Advisory Committee's Note to Rule 404; Proposed Federal Rules of Evidence 4-04(a)(1), 46 F.R.D. 161, 227 (1969). Under the common law, there was a similar distinction made between general good character and particular traits of character. *See* McCormick, Evidence § 191, at 455 (2d ed. 1972); 1 Wigmore, Evidence § 59, at 458; 22 Wright & Graham, Federal Practice and Procedure: Evidence § 5236, at 382.

*Angelini*, 678 F.2d at 382. Rule 404 "was intended to restate the common law rule." *Id.* (citing 2 Weinstein & Berger, Evidence ¶ 404(05) (1981)).

We determine that, at the outset of a hearing regarding the admissibility of character evidence under Rule 5-404(a)(2)(A), the defendant must identify with particularity the quality that the defendant contends is a "trait of character," and must articulate how the proffered trait sheds light on the "kind of person" he or she is. Generally, this should not

30

be a difficult burden to meet. As long as the defendant's proffered character trait is sufficiently specific to distinguish it from "good character generally," the defendant will pass this first part of the test.

We have no difficulty concluding that the quality of being appropriate with children (or similar formulations, such as trustworthiness with children, or sexual morality with respect to children) can shed light on the type of person one is. *See Enakiev*, 29 P.3d at 1163 ("Evidence of a person's character with respect to sexual propriety evinces that person's propensity to act in a sexually proper manner in all the varying situations of life. In that sense, sexual propriety is materially indistinguishable from … other examples of character traits," such as truthfulness, honesty, temperance, carefulness, or peacefulness, "and is properly deemed a character trait.") (citation omitted); *Hughes*, 841 So. 2d at 722 (evidence of a defendant's lack of sexual deviancy, or lack of interest in children as the occasion of sexual desire, "constitutes evidence of character because it reveals the '*actual* moral or psychical *disposition*' of the person") (quoting 1 Wigmore, Evidence, § 52, at 448 (3d ed. 1940) (emphasis in original)). Thus, when a defendant seeks to offer evidence of his character for appropriateness with children in his custody or care, or a similar trait involving a disposition toward children, the trial court should proceed to the pertinence, i.e., relevance, inquiry.

### b. Whether a Defendant's Character for Appropriateness with Children Is a "Pertinent" Trait in a Particular Criminal Case

As discussed above, a court may not exclude *per se* proffered character evidence of appropriateness with children as irrelevant to the determination of charges in a criminal

31

case. However, such evidence is not automatically relevant in every criminal case in which a defendant is charged with a crime against a child. A court should consider in each instance whether the proffered testimony is evidence of a "pertinent" trait of character, given the specific charges in the case. That is, the court should consider whether such evidence, if believed by the jury, makes it less likely that the defendant committed the charged offense. *See Sahin v. State*, 337 Md. 304, 311 (1995) ("To be relevant, it is necessary that the character be confined to an attribute or trait the existence or nonexistence of which would be involved in the noncommission or commission of the particular crime charged.") (cleaned up). Thus, while a particular character trait may be relevant in one kind of criminal case, that same trait will not be relevant in others. In *Braxton v. State*, 11 Md. App. 435 (1971), the Court of Special Appeals listed several examples of irrelevant character traits for specific crimes:

> It is irrelevant to show the defendant's reputation for honesty and integrity in a prosecution for adultery; for truth and veracity, or peace and quietude, in a prosecution for statutory rape; for good military conduct in a rape prosecution; for truth and veracity in a robbery prosecution; or for honesty and integrity, in a murder prosecution; for morality and sobriety in a prosecution for a false bank report entry; or for reliability in business in a prosecution for the malicious destruction of property.

*Id.* at 440 n.3 (internal quotation marks and citation omitted).

Where the State alleges that a defendant sexually abused a child who was in his custody or care at the time of the alleged offense, the relevance of character evidence concerning the defendant's appropriateness with children in his custody or care is clear to us. To be sure, a jury may ultimately give such evidence little weight. However, for the reasons discussed above, we believe such character evidence has probative value,

32

especially in a case where (as here) temporary custody or care of the allegedly abused child is an element of at least one of the charged offenses.

An arguably more difficult case in which to establish relevance may be where the defendant is charged with, for example, kidnapping and sexually assaulting a child with whom he has no prior relationship. In such a case, the probative value of character evidence of appropriateness with children (in one's custody or otherwise) may depend on additional factors, including the theory of the defense and the particulars of the character evidence the defendant seeks to introduce. We leave such determinations of relevance for trial judges to assess on a case-by-case basis.

### c. Application of the Rule 5-403 Balancing Test

If a trial judge determines that the proffered evidence goes to a "trait of character" and that such evidence has probative value to the jury's consideration of the charges against the defendant, then the trial court should conduct a Rule 5-403 analysis (if the State requests that the court do so). If the court concludes that the probative value of the character evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, etc., then the trial court may exclude the proffered evidence.[18]

---

[18] If the result of the trial court's analysis under the three-part test we have articulated is that the category of proposed character evidence is ruled admissible, the defendant still must establish that the proffered witness has a sufficient basis of knowledge upon which to provide opinion or reputation testimony regarding the character of the defendant. *See Devincentz*, 460 Md. at 543-44. And, if the defense seeks to admit character evidence through improper methods, e.g., proof of specific instances of conduct, as opposed to opinion and/or reputation evidence, then the court may sustain an objection by the State on that basis as well. Md. Rule 5-405(a).

**B. Any Error in Excluding Vigna's Proffered Character Evidence Was Harmless Beyond a Reasonable Doubt.**

A trial court's error does not necessarily require reversal of a conviction and a new trial. If an appellate court finds, beyond a reasonable doubt, that the error had no influence on the verdict, then the error is deemed harmless, and the conviction stands. *See, e.g., Morris v. State*, 418 Md. 194, 221-22 (2011). The exclusion of evidence is harmless if it is "unimportant in relation to everything else the jury considered on the issue in question, as revealed by the record." *Dionas v. State*, 436 Md. 97, 117 (2013).

In this case, the circuit court ended its admissibility analysis after concluding that appropriateness in interactions with children is not a character trait. The circuit court was troubled by the "specific" and "unique" nature of the quality that Vigna articulated as a character trait. However, as discussed above, at the first step in the analysis we outlined above, we are concerned with traits that suffer from the opposite problem, i.e., traits that are so broad they are synonymous with good character generally. Appropriateness with children in one's custody or care does not suffer from this infirmity. The circuit court should have considered that trait's relevance to the jury's consideration of the charges Vigna faced.

The Court of Special Appeals considered the relevance question, but as discussed above, erred in adopting a *per se* rule that such character evidence has no relevance in a case where a defendant is charged with a sex offense against a child. We conclude that evidence of Vigna's character for appropriateness with children in his custody or care had

34

at least some probative value in determining whether he abused the five children in his temporary custody or care, as alleged in the indictments.

If we assume for the sake of argument that the State had no valid basis upon which to argue for exclusion of the proffered character evidence under Rule 5-403, we nevertheless conclude that the circuit court's error in excluding the evidence was harmless beyond a reasonable doubt. As the Court of Special Appeals aptly observed:

> Ultimately, very little of the testimony that Mr. Vigna offered did not find its way to the jury. He called nine defense witnesses who testified that he was law-abiding and truthful. Four were former colleagues, and two worked in Mr. Vigna's classroom alongside him. One character witness, who was both a former colleague and the parent of a former student, testified that she trusted Mr. Vigna "obviously, with the lives of [her] children" and that "as a coworker, I trust him helping me out of some very difficult situations with other children. So [ ] he's very trustworthy and ... very calming to the children that I needed help with." Another stated that he would trust Mr. Vigna with his life. Mr. Vigna's twelve-year-old niece testified that she trusted her uncle. And despite excluding testimony about Mr. Vigna's reputation for interacting appropriately with children, the court allowed multiple parents to testify about the positive experience of having Mr. Vigna teach their children. He was not permitted to elicit testimony that he had the reputation for conducting himself appropriately with children, but the extensive testimony he did elicit supports the "trait" that Mr. Vigna sought to establish.

241 Md. App. at 679-80.

We agree with the Court of Special Appeals' assessment of the record. The testimony from parents who stated that, based on their experiences in seeing Vigna interact with children, they would entrust the lives of their children and other children to him, was functionally the equivalent of an opinion that Vigna was the type of person who was appropriate with children. *See McDowell v. State*, 318 P.3d 352, 359-60 (Wyo. 2014) (witness who testified that her brother (the defendant) was an attentive, "fun uncle" and

35

that she never "ha[d] any problems" with him while her children were growing up, colloquially provided an opinion as to the defendant's trustworthiness with children).

Moreover, the opinion testimony of multiple defense witnesses that Vigna was law-abiding, although broader than the excluded opinion evidence Vigna sought to elicit, ultimately served the same purpose. That is, if the jurors credited the character evidence that Vigna was law-abiding, they logically would have inferred that Vigna was not the type of person who would commit the specific violations of law with which he was charged.

Finally, Vigna testified in his own defense and denied that he ever improperly touched any of his students. Indeed, he claimed that touching a student inappropriately was "simply against the fiber of [him]." The defense witnesses who followed Vigna on the witness stand testified to his character for truthfulness. The character evidence that Vigna was a truthful person, if believed, supported Vigna's argument that the jurors should believe his denial of the charges.

For these reasons, we conclude that any error in precluding the defense witnesses from opining that Vigna was not just law-abiding and truthful, but also was the type of person who is appropriate with children, was harmless beyond a reasonable doubt. *See Rothwell*, 294 P.3d at 1150 (improper exclusion of character evidence that defendant was trustworthy with children was harmless, given its marginal probative value); *McAlpin*, 812 P.2d at 577-78 (erroneous exclusion of opinion evidence that defendant was not a person given to lewd conduct was harmless under a reasonable probability standard); *Hallman*, 379 S.E.2d at 117 (erroneous exclusion of evidence of defendant's reputation for "morality" was harmless beyond a reasonable doubt, where the character witnesses

36

testified that defendant had a good reputation for truth and veracity, which supported

defendant's own testimony that he did not commit the alleged abuse).[19]

### C. Vigna's Constitutional Arguments Are Not Preserved for Appellate Review or Abandoned, and Lack Merit in Any Event.

In the Court of Special Appeals, Vigna argued that the circuit court's decisions to

exclude his proffered character evidence and admit the 2008 and 2013 reprimands violated

his right to a fair trial under the Sixth Amendment to the United States Constitution.

Vigna's theory was that the circuit court's admission of his prior reprimands, combined

with the exclusion of the defense witnesses' proffered opinion and/or reputation testimony

concerning Vigna's character for appropriateness with children, was so prejudicial that it

---

[19] Vigna's reliance on *Pierce v. State*, 62 Md. App. 453 (1985), is unavailing. In *Pierce*, the evidence showed that the victim began arguing with the defendant at a party when the defendant applied first aid to the victim's teenage son. The victim, who was intoxicated at the time, started grappling with the defendant, who was carrying a handgun for protection. During the struggle, the firearm discharged, killing the victim. *Id.* at 455-56. The trial judge precluded the defendant from eliciting character evidence of her peaceable nature, but two defense witnesses were allowed to testify to the defendant's general good character and law-abiding nature. The jury acquitted the defendant of murder, but convicted her of voluntary manslaughter. On appeal, the Court of Special Appeals held that the erroneous exclusion of character evidence of peacefulness was not harmless beyond a reasonable doubt. *Id.* at 461-62.

Assuming we would reach the same conclusion in *Pierce* as the Court of Special Appeals did, *Pierce* is distinguishable from this case. Evidence that a defendant is generally law-abiding may be much less significant than evidence that the defendant is peaceful, where the defendant is charged with murder as a result of a homicide that is not alleged to have been premeditated, but rather occurred during a struggle in a matter of seconds. In contrast, when a defendant is charged with committing sex crimes against multiple children spanning more than a decade, a jury may be able more readily to infer from character evidence about the defendant's law-abidingness that the defendant is not the type of person who would commit the crimes with which he is charged.

37

denied him a fair trial. The Court of Special Appeals rejected this argument. *Vigna*, 241 Md. App. at 732-33.

In his petition for *certiorari*, the second question Vigna asked us to review was: "Did the Court of Special Appeals err when it failed to recognize that denying Mr. Vigna the ability to introduce relevant character evidence, while at the same time allowing the state to introduce non-criminal 404(b) 'bad acts' character evidence, denied him the right to a fair trial under the Sixth Amendment of the United States Constitution?"

We agreed to consider this question when we granted Vigna's petition for *certiorari*. However, in his briefs to this Court, Vigna did not include any substantive argument about how the purported imbalance of the two evidentiary rulings rendered his trial unfair under the Sixth Amendment. Thus, Vigna abandoned the constitutional argument underlying the second question for which we granted review. *See* Md. Rules 8-504(a)(6) & (c).

In place of his abandoned Sixth Amendment argument, Vigna made a different constitutional argument, claiming for the first time that the exclusion of his proffered character evidence violated his right to due process.[20] Vigna seemingly accepts that exclusion of the type of character evidence he sought to admit would not have posed a due process problem when "our court system [was] male-centered." However, according to

---

[20] Vigna did not specify in his briefs whether his due process claim arises under the Fifth Amendment to the United States Constitution, made applicable to the States by the Fourteenth Amendment, or under Article 24 of the Maryland Declaration of Rights, or both.

Vigna, in the advent of statutory protections that now exist for victims,[21] "this Court should be mindful of the pendulum swinging too far," and should hold that, as a matter of due process, a court must allow a defendant to introduce relevant character evidence of the sort Vigna proffered in his trial.

Vigna failed to preserve this due process argument for appellate review. *See* Md. Rule 8-131(a) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court."). Regardless, both Vigna's original Sixth Amendment argument and his new due process argument lack merit. As discussed above, any error in the exclusion of character evidence was harmless beyond a reasonable doubt. By definition, then, Vigna received a fair trial. It may not have been a perfect trial, given the limitation on Vigna's ability to elicit the more specific character evidence he proffered, but fairness, not perfection, is the constitutional standard. *See Dorsey v. State*, 276 Md. 638, 647 (1976) ("[I]t is firmly established that an accused has a constitutional right to a fair trial but not necessarily to that seldom experienced rarity, a perfect trial.") (cleaned up).

Moreover, we disagree with Vigna that due process requires the admission of character evidence of the sort he sought to elicit in this case, either as applied to him or as to all defendants. The logical conclusion of Vigna's argument is that a trial judge lacks all

---

[21] Vigna observes that "[i]n Maryland we have seen the advent of rape-shield laws, expansion of 404(b)-character evidence applied to sexual assault cases; child hearsay evidentiary rules (See Md. Rule 5-802.1), amendments to criminal procedure rules specifically to protect child sexual assault victims (See Md. Crim. Pro. 11-304), and also the establishment of Maryland's victim's rights laws that are so robust and progressive that they are now explicitly listed in the Maryland Declaration of Rights."

discretion when it comes to relevant character evidence. To accept that contention would be to render such evidence immune to exclusion or limitation under Rule 5-403. We reject that assertion. We trust trial judges to exercise their discretion wisely in such circumstances, giving due consideration to a defendant's right to put on a meaningful defense. *See, e.g., California v. Trombetta*, 467 U.S. 479, 485 (1984). As for the contention that the circuit court's ruling, as applied to Vigna, violated due process, we again disagree. The ruling did not prevent Vigna from putting on any kind of character evidence, let alone a meaningful defense. The record reflects that Vigna was ably represented by experienced trial counsel who, indeed, did present a meaningful defense on behalf of his client. The jury seems to have deliberated with care, acquitting Vigna of five of the 14 charges. We are confident that Vigna received due process, regardless of any harmless error that resulted from the exclusion of the character evidence Vigna sought to introduce.

## IV

## Conclusion

As discussed above, character evidence of a defendant's appropriateness with children in his custody or care (or a similar character trait) may be admissible in a case where a defendant is charged with a sex crime against a child. However, any error in the exclusion of such character evidence in Vigna's case was harmless beyond a reasonable doubt, given the extensive character evidence that the jury heard about Vigna's character

for being law-abiding and truthful. Therefore, we affirm the judgment of the Court of

Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.**

Circuit Court for Montgomery County
Case Nos. 130781C & 129932C
Argued: March 9, 2020

IN THE COURT OF APPEALS

OF MARYLAND

No. 55

September Term, 2019

_____

JOHN VIGNA

v.

STATE OF MARYLAND

_____

Barbera, C.J.,
McDonald,
Watts,
Hotten,
Getty,
Booth,
Biran,

JJ.

_____

Concurring Opinion by Hotten, J., which
Watts, J. joins.

_____

Filed: August 18, 2020

Respectfully, I join the Majority in affirming the judgment of the Court of Special Appeals. However, I write separately to express my views regarding the Majority's conclusion that appropriateness with children in the care of Mr. Vigna *is* a pertinent character trait.

Before trial, Mr. Vigna attempted to introduce, as character evidence, testimony that he had a reputation in the community for "appropriate interaction with students," which he later broadened to include "any situation in which he has supervisory responsibility for children in his custody[.]" Under Maryland Rule 5-404(a)(2)(A): "An accused [in a criminal case] may offer evidence of the accused's pertinent trait of character. If the evidence is admitted, the prosecution may offer evidence to rebut it." But fundamentally, what constitutes a "character trait"?

The plain-language of the Rule outlines two elements that must be satisfied before the accused may offer character evidence: (1) the evidence must pertain to a trait of character and (2) that trait must be pertinent, or relevant, to the crime charged. Appropriateness with children in his care or custody is not a trait of character. I am unconvinced that "reputation" for appropriate interaction with children in his care is a character trait, nor am I convinced that this testimony would be relevant in a child sex abuse trial. I explain my reasoning more fully herein.

## A. *Appropriate Interactions with Children in His Care is Not a Trait of Character.*

As a general rule, "evidence of a person's character or character trait is not admissible to prove that the person acted in accordance with the character or trait on a particular occasion." Md. Rule 5-404(a)(1). Stated differently, such evidence is

inadmissible to prove propensity.  Maryland Rule 5-404(a)(2)(A) is an exception to the general prohibition against propensity evidence.

Character under the evidentiary rules, "is a generalized description of a person's disposition, or of the[ir] disposition [with] respect to a general trait, such as honesty, temperance or peacefulness, that usually is regarded as meriting approval or disapproval." 1 McCormick on Evid. § 195 (8th ed. 2020).  While the text of the relevant rules does not explicitly define what constitutes a "character trait," Black's Law Dictionary similarly defines "character" as "[t]he qualities that combine to make an individual human being distinctive from others, esp[ecially] as regards morality and behavior; the disposition, reputation, or collective traits of a person as they might be gathered from close observation of that person's pattern of behavior."  BLACK'S LAW DICTIONARY (11th ed. 2019).  A "trait" is generally understood to be an "[e]lement of a person's [makeup] serving as an explanation of personal characteristics."  *Trait*, THE LAW DICTIONARY, https://thelawdictionary.org/trait/ (last visited on August 11, 2020), archived at https://perma.cc/DE6Y-PMTF;  Trait, *Merriam-Webster's Dictionary*, https://www.merriam-webster.com/dictionary/trait (last visited August 11, 2020), archived at https://perma.cc/XA8F-P3HY (defining "trait" as "a distinguishing quality (as of personal character)").

These definitions prove useful here.  As the trial judge articulated at the motions hearing, "usually character traits . . . span across all walks of life and all categories of interaction with people."  However, Mr. Vigna attempted to elicit testimony that he was appropriate with children when they were under his supervision.  Unlike a general character

2

for being a peaceful person in an assault prosecution, for example, evidence that Mr. Vigna acted appropriately with children in his care or custody is evidence of conduct under specific circumstances. It is not the kind of evidence contemplated by the exceptions to Rule 5-404(a)(1), because the evidence is situational and does not transcend *all* circumstances and interactions with *all* people. Although a defendant is permitted to introduce evidence of a character trait on direct examination, such evidence is limited to testimony regarding the reputation of the accused for a particular character trait, and the witness's personal opinion concerning that trait. Md. Rule 5-405. A defendant is not permitted to introduce evidence of specific instances of conduct on direct examination, unless evidence of the character trait is an "essential element of a charge, claim, or defense[.]" Md. Rule 5-405(b). Mr. Vigna framed this witness testimony as concerning his reputation in the community, but in actuality, this testimony constitutes past instances of behavior or conduct, which is prohibited under the relevant evidentiary rules. Mr. Vigna's attempt to reframe testimony of past conduct as "reputation" evidence falls just short of describing his conduct with children on a particular date and time. As such, the proffered evidence was not evidence of a character attribute or trait.

### B. Appropriate Interactions with Children in His Care is Not "Pertinent" to Allegations of Child Sex Abuse.

Assuming that the proffered evidence does qualify as a character trait, it was not pertinent. As so well expressed by the Court of Special Appeals, "[t]he scope of what constitutes a 'pertinent character trait' under Rule 5-404(a)(2)(A) is defined by the nature of the crimes alleged." *Vigna v. State*, 241 Md. App. 704, 717–18, 213 A.3d 668, 676

3

(2019). It is one that is relevant to the alleged crimes of the accused. *Braxton v. State*, 11 Md. App. 435, 440, 274 A.2d 647, 650 (1971). To surpass the relevance bar, the character trait must be "confined to an attribute or trait the existence or nonexistence of which would be involved in the noncommission or commission of the particular crime[.]" *Id.* In other words, to be admissible as a pertinent trait of character, the particular evidence offered must bear some nexus to the charged crimes. *See State v. Bogle*, 324 N.C. 190, 201, 376 S.E.2d 745, 751 (1989) (stating that a "pertinent" character trait is that which "*bear[s] a special relationship to . . .* the crime charged") (emphasis in original). In the case at bar, we are concerned with whether "Mr. Vigna's reputation in the community for appropriately interacting with children bears on whether he sexually abused them." *Vigna*, 241 Md. App. at 718, 213 A.3d at 676. I agree with the Court of Special Appeals and the trial court, that such evidence has no bearing in this type of case.

Evidence of appropriate behavior or conduct with children, unlike character for truthfulness or peacefulness in a fraud or assault investigation, adds nothing to a child sex abuse prosecution, because of the nature of the allegations. As I believe the Court of Special Appeals correctly pointed out, child sexual predators are particularly insidious. These types of sexual predators often hide in plain sight. They "blend into the community and often stand in trust relationships—coaches, clergy, teachers, physicians, or family members—with their victims." *Vigna*, 241 Md. App. at 722, 213 A.3d at 678 (citing Anne-Marie McAlinden, *Setting 'Em Up: Personal, Familial, and Institutional Grooming in the Sexual Abuse of Children*, 15 SOC. AND LEGAL STUD. 339, 348 (2006)). They "groom victims through these relationships and skillfully manipulate a child into a situation where

4

he or she can be more readily sexually abused and is simultaneously less likely to disclose." *Id.* (internal quotations omitted). Mr. Vigna was an elementary school teacher with more than twenty years in the same school system. Considering the covert nature of child sexual abuse under the circumstances presented, testimony regarding Mr. Vigna's appropriate behavior with children in his care would prove irrelevant and tend to confuse or mislead the triers of fact.

A minority of jurisdictions have reached similar conclusions in that regard. For example, in *State v. Jackson*, "the Court of Appeals of Washington held that[,] because of the secretive nature of sexual crimes, and sexual activity in general, [] reputation for sexual activity, or lack thereof, bore no correlation to the likelihood that [the defendant] committed the crimes charged[.]" *Vigna*, 241 Md. App. at 720, 213 A.3d at 677 (citing *Jackson*, 46 Wash. App. 360, 365, 730 P.2d 1361, 1364 (1986)). In that case, the defendant was convicted of statutory rape, after the trial court excluded witness testimony that the defendant had a good reputation in the community for "not spend[ing] an inordinate amount of time with children in the community who are less than the age of ten" and generally for "not molesting children[.]" *Jackson*, 46 Wash. App. at 365, 730 P.2d at 1364. The appellate court rejected the argument that this evidence was relevant because crimes of a sexual nature are "normally [] intimate, private affair[s] not known to the community." *Vigna*, 241 Md. App at 720, 213 A.3d at 677 (footnote omitted). As the Court of Special Appeals aptly acknowledged:

> Unlike honesty or peacefulness, traits [that] a person might exhibit visibly day-to-day, sexual interests, predilections, or deviancy are not readily discernable to a casual observer, or even a close colleague. For that reason,

5

courts in other states have disagreed with the majority view and have found reputation evidence relating to sexual behavior irrelevant to a defendant's guilt for sexual crimes involving children. Put another way, the fact that a defendant might have behaved appropriately with children in some instances does not make it more or less likely that the defendant sexually abused a child.

*Id.* In conclusion, for the reasons previously expressed, I respectfully concur.

Judge Watts has authorized me to state that she joins in this opinion.

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/coa/55a19cn.pdf